## EIGHTH UTILITIES DISTRICT ET AL. *v.* TOWN OF MANCHESTER ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and SIDOR, Js.

Argued May 3—decision released August 29, 1978

*Victor I. Moses,* town counsel, and *Thomas J. Prior,* assistant town counsel, for the appellant (named defendant).

*John D. LaBelle,* with whom, on the brief, was *Robert H. Bletchman,* for the appellees (plaintiffs).

LOISELLE, J. The plaintiff Eighth Utilities District (hereinafter "Eighth District" or "District") brought a declaratory judgment action against the town of Manchester and others to determine whether it has the right to extend its boundary lines and to furnish fire protection to a section of the town of Manchester known as the Buckland Area. Further relief was sought by way of a permanent injunction enjoining the town of Manchester from interfering with the extension of the Eighth District boundary and the furnishing of fire protection to the Buckland Area. The trial court rendered judgment for the plaintiffs and issued the injunctive relief sought. The defendant town of Manchester has appealed.

Although the defendant town sought to add sixty-one paragraphs of its draft finding to the court's finding, it has waived all but seven. These seven paragraphs are added to the finding as they are admitted or undisputed. The claim that two paragraphs of the finding were found without evidence is well taken and they are stricken. The remaining claim that a paragraph of the finding should be stricken because it is of doubtful meaning is denied as the paragraph is supported by evidence presented in the appendices.

An overview of the pertinent legislation relating to the fire protection services in the town of Manchester will facilitate a determination of the issues

in this case. In 1915, by a special act of the General Assembly; 17 Special Acts 316, No. 299; the Eighth District was incorporated within the town of Manchester to establish and maintain, inter alia, a fire department within certain authorized limits. Another special act of the legislature; 23 Special Acts 168, No. 230; enacted in 1939, extended the area in which the District was authorized to furnish fire protection "upon application of a majority of the property owners in any particular locality in said additional territory." The Buckland Area lies within the extended authorized area designated by this act.

In 1947, again by special act; 25 Special Acts 217, No. 193; the charter of the town of Manchester was adopted. The charter provided that the fire districts existing in the town as of the date of the charter's adoption "shall continue in all respects as now provided by law." Manchester Charter § 10-8. The charter further allowed (§ 10-9) the town's general manager to make rules and regulations pertaining to fire protection in all those portions of the town not included within the limits of any fire districts and to enter into agreements with any fire district for aid in extinguishing fires within the town. Section 10-10 of the charter empowered the town to establish by ordinance a town fire department "provided the provisions of any such ordinance concerning the territory, jurisdiction or property . . . [of the districts] shall not become effective until such District, in a meeting duly called for that purpose, shall have voted to accept its provisions." This provision was acted upon in 1956 when such an ordinance was adopted, and the resulting town fire department has been in operation since 1957. The Eighth District has

never voted to accept any town ordinance affecting its authorized territory. Until November 17, 1975, the town took responsibility for fire protection to the Buckland Area, hiring, pursuant to contract, the Eighth District to actually furnish such protection pursuant to § 10-9 of the charter.

In 1963 the General Assembly amended the act which originally incorporated the Eighth District within the town, by enacting Special Act No. 200; 31 Special Acts 184, No. 200. That act extended the area in which the District was authorized to offer fire protection. Section 6 of the act specifically provided that "[t]he present district boundary lines may be extended, within the territory authorized to be serviced by this act, upon the application of a majority of owners of real property in the additional area to be served, and such district boundary lines may be extended by vote of the legislative body of the district when . . . fire protection shall be furnished to such additional territory." Section 4 of the act provided that "[t]he town of Manchester may continue to furnish . . . fire protection in those areas north of Middle Turnpike West and north of Middle Turnpike East where the town of Manchester is now furnishing such . . . services." The Buckland Area is within that territory. It should be noted that this act was passed subsequent to the time the town established its fire department and assumed responsibility for fire protection in the Buckland Area.

In April of 1974, having been requested to study the town's fire protection needs, the chief of the Manchester fire department recommended that the town take over the fire protection needs of the Buckland Area, thereby concluding the town's con-

tractual relationship with the Eighth District. In April of 1975, the town notified the District that it planned to terminate the contract by which the District actually served the Buckland Area. During this time, the town made plans to construct a firehouse in the disputed territory. At public hearings held to discuss a possible site, several townspeople in the Buckland Area spoke in opposition to the proposed firehouse.

On or about September 25, 1975, a majority of the owners of real property in the Buckland Area filed applications with the District to be included in its service area. On November 17, 1975, the District voters acted favorably upon the applications, voting by a majority to extend their boundary lines to furnish fire protection to the Buckland Area.[1]

Realizing that certain jurisdictional difficulties were involved in their plan to take over the actual fire protection for Buckland, the town board of directors delayed construction of the firehouse pending legal advice. At a special meeting held September 29, 1975, counsel retained to study the problem stated that in his opinion the town had a clear legal authority to proceed with construction of the Buckland firehouse. Thereafter, the town board of directors voted to authorize the town's general manager to enter into a contract for the construction of the firehouse. At the time this vote was taken, the directors were aware that an application had been submitted by the Buckland Area real property owners seeking to have the Eighth District extend its fire protection boundaries to

---

[1] In July of 1975, the Buckland property owners had submitted a prior application to the Eighth District, which had acted favorably upon the application, but this petition was subsequently found to be invalid.

include their area. By letter dated January 2, 1976, the Eighth District notified the town that as a result of its vote, taken on November 17, 1975, to approve the application of the Buckland property owners, the District lines were expanded to include the Buckland Area and the Buckland Area would receive fire protection directly from the District.

Construing the relevant legislation, the court concluded that, since 1939, the Buckland Area property owners had the right to apply to the District for fire protection and, since 1963, the District had been empowered to accept, by vote, any such application. Consequently, a declaratory judgment was entered to the effect that "since a majority of the owners of real property in the 'Buckland Area' have so applied and since the legislative body of the Eighth Utilities District has so voted, the said District has the right to extend its District boundary lines and furnish fire protection to the so-called 'Buckland Area' within its authorized territory." Trial court's memorandum of decision (September 29, 1976).

The central issue raised on this appeal is whether the 1957 assumption by the town of the responsibility for fire protection services to the Buckland Area preempted the previously established rights of the Buckland property owners to seek protection by the Eighth District and the District's corollary right to extend its boundary into the Buckland Area. In large part, a determination of this question revolves around the significance to be accorded the relevant provisions of Special Act No. 200; 31 Special Acts 184, No. 200; as those provisions relate to the prior related special acts.

The defendant agrees that in 1939, by virtue of Special Act No. 230; 23 Special Acts 168, No. 230; the Eighth District was given authorization to extend its boundaries into the Buckland Area "upon application of a majority of the property owners" in that locality. It is the town's argument, however, that the 1947 charter similarly gave the town the right to provide fire protection to the Buckland Area and that since the town was the first to furnish this protection, the Eighth District's equivalent right had terminated.

Within this context, the defendant claims that § 4 of Special Act 200[2] clearly recognizes that the town, having provided the Buckland Area with fire protection continuously since 1957—albeit through contract with the Eighth District—is authorized to continue this service exclusively for so long as it so desires. This argument is grounded

[2] "[31 Special Acts 184, No. 200 (1963)] AN ACT CHANGING THE NAME OF THE EIGHTH SCHOOL AND UTILITIES DISTRICT OF MANCHESTER TO THE EIGHTH UTILITIES DISTRICT AND EXTENDING ITS TERRITORY.

Section 1. The name of the Eighth School and Utilities District of Manchester, incorporated by number 299 of the special acts of 1915, is changed to 'The Eighth Utilities District.'

Sec. 2. The territory in which the district is authorized to furnish sanitary sewer facilities and services and fire protection shall be as follows: In the town of Manchester in all of the territory north of Middle Turnpike West and north of Middle Turnpike East, from the East Hartford town line on the west to the Bolton-Vernon town line on the east.

Sec. 3. The Eighth Utilities District may furnish sanitary sewer facilities and services and fire protection south of Middle Turnpike West and south of Middle Turnpike East, and the town of Manchester may furnish sewer facilities and services and fire protection within or without the district boundaries north of Middle Turnpike West and north of Middle Turnpike East, with the approval of the respective legislative bodies of the town of Manchester and of The Eighth Utilities District.

Sec. 4. The town of Manchester may continue to furnish sewer facilities and services and fire protection in those areas north of

upon the principle that the legislature is presumed to act with knowledge of the circumstances prevailing at the time of an enactment. Consequently, the town reasons, the legislature must have intended that § 4 secure the status quo.

In contravention of the established principle that a legislative act must be construed to give effect and to harmonize all of its parts; *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150; the defendant's argument fails to encompass the other relevant provisions of the 1963 act. Section 2 of the act defines the area in which the Eighth District is authorized to provide its services and § 6 provides the mode by which this may occur. At the time Special Act No. 200 was enacted, the town was already furnishing fire protection and taxing all of those localities within the District's authorized area not actually

Middle Turnpike West and north of Middle Turnpike East where the town of Manchester is now furnishing such facilities and services.

Sec. 5. The Eighth Utilities District may continue to furnish sewer facilities and services and fire protection in those areas south of Middle Turnpike West and south of Middle Turnpike East where the district is now furnishing such facilities and services.

Sec. 6. The present district boundary lines may be extended, within the territory authorized to be serviced by this act upon the application of a majority of owners of real property in the additional area to be served, and such district boundary lines may be extended by vote of the legislative body of the district when either sewer facilities and services or fire protection shall be furnished to such additional territory. If only sewer facilities and services are furnished and no fire protection is furnished any area in the district, one-half only of the mill rate for tax assessment shall be levied on the property owners in such area. If only fire protection is furnished and no sewer facilities and services are furnished in any area in the district, one-half only of the mill rate for tax assessment shall be levied on the property owners in such area.

Sec. 7. Persons eligible to vote at any meeting of The Eighth Utilities District shall be electors of the town of Manchester, and shall reside within the boundaries of the district, and shall so reside for a period of three months prior to the date of the meeting at which they vote."

being serviced by the District. To accept the town's argument would in essence mean that the rights of property owners within the District's authorized area to apply for inclusion within its service area would be subject to the whim of the town: if the town chose to continue its service, then the property owners would have to accept the town's taxation and service; if, however, the town chose not to offer fire protection, the property owners would be permitted to apply to the Eighth District for its service, hoping that the District would act favorably upon their application. We cannot say that this is what the legislature intended in 1963 when it reiterated the rights granted in 1939 establishing that the Buckland Area owners had the right to apply for fire protection to the Eighth District. Rather, we agree with the court that this right has remained with the Buckland property owners since 1939 and that by virtue of their application and the District's acceptance of the application, the Eighth District is entitled to extend its boundaries to include the Buckland Area.

The town argues that its right to provide continued fire protection to the Buckland Area is in conflict with the District's claimed right to provide such service and that, consequently, the town's right should prevail in accordance with chapter 21 of the 1947 charter; see 25 Special Acts 217, No. 193; which provides (§ 21-9) that "[i]n case of any conflict of authority between the town of Manchester and any district incorporated within the limits of said town, the authority of said town shall prevail." The weakness of this claim lies in the fact that no conflict exists. Section 4 of the 1963 act permits the town to continue furnishing fire protection to those areas in which such service is already being ren-

dered. This right, when read in conjunction with §§ 2 and 6, however, is tempered by the authority of the Eighth District to move into localities within its authorized area, upon the acceptance of an application from a majority of the property owners in the specified area. Because there is no conflict, the tenet encompassed in the 1947 act is inapplicable.

The town further claims that even if the Eighth District is entitled to extend its boundaries to include the Buckland Area, it is estopped from acting on the petition submitted by the property owners of that area. This claim is premised upon the facts surrounding the petition: Prior to the submission of the petition, some officials of the Eighth District knew of and encouraged the building of a firehouse in the Buckland Area. By the time this case came to trial, the firehouse was 85 percent completed and the town was committed for the full cost of its completion, amounting to $295,000 for the firehouse, $32,400 for the land, and $10,000 for the cost of extending the alarm lines into the area.

As previously stated, however, the town began construction of the firehouse knowing of the activities of the Buckland Area property owners. In fact, the town was aware of a prior petition submitted by the Buckland owners to the Eighth District, which was held to be invalid. Prior to the town's initial vote authorizing the town manager to enter into a construction contract, a subsequent petition was submitted by the Buckland property owners to the District, a fact of which the town was aware. "Estoppel involves the two elements of misleading conduct by one party and prejudicial harm resulting to the other party." *Mercier* v. *American Refractories & Crucible Corporation*, 151

Conn. 559, 565, 200 A.2d 716. The party asserting estoppel "must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565. It cannot reasonably be claimed that the town was without full knowledge of the problems surrounding the erection of the firehouse. Cf. *Armstrong* v. *Leverone,* 105 Conn. 464, 136 A. 71.

The claim that the trial court's interpretation of the Special Act of 1963 is unconstitutional does not appear to have been raised in the trial court and therefore need not be considered in this appeal. Practice Book, 1963, § 652; *State* v. *Williams,* 169 Conn. 322, 333, 363 A.2d 72. At any rate, the claim is without merit.

The final claim made by the town is that the injunction issued by the trial court is too indefinite. The action sought a declaratory judgment determining whether the Eighth District had a right to extend its boundary lines and to furnish full protection to the Buckland Area. The court declared that the District had that right. The injunctive relief simply enjoined the defendant town from interfering with that right. The other matters which the town claims should have been clarified in the injunction were not matters before the court in the declaratory judgment action and, consequently, they could not have been made a part of the injunctive relief.

There is no error.

In this opinion COTTER, C. J., and LONGO, J., concurred.

BOGDANSKI, J. (dissenting). The trial court's failure to consider and apply § 21-9 of the 1947 Manchester charter established by 25 Special Acts 217, No. 193, constituted error as a matter of law. Section 21-9 provides that "[i]n case of any conflict of authority between the town of Manchester and any district incorporated within the limits of said town, the authority of said town shall prevail." That section demonstrates clearly the legislative intent that when a question of jurisdiction over the same subject matter is involved, no incorporated district within the town shall have rights superior to those of the town. The purpose of that provision was to resolve any and all conflicts which might arise between the town and any incorporated district concerning issues of concurrent jurisdiction.

Despite that legislative mandate, the trial court ruled that § 21-9 did not apply because the only conflict in authority that had occurred was created by the town, in that the town refused to acquiesce in the Eighth District's assumption of authority over the Buckland Area. The court said, in effect, that if the town had agreed to the Eighth District's action, there would have been no conflict. That reasoning begs the very issue in the case since it assumes that the town had no right to rely upon its express charter provisions.

Actually, the trial court failed to consider two pertinent provisions of the 1947 town charter: first, § 10-10 of the charter which expressly authorizes the town to furnish fire protection to all portions of the town not included within the Eighth District; second, § 21-9 which mandates that when a conflict of authority arises between the town and the District, such as the present one over the Buckland

Area, the town shall prevail. Moreover, those charter provisions were not repealed by the Special Act of 1963; 31 Special Acts 184, No. 201; and no claim is made by the plaintiffs to that effect. In any event, "[r]epeals by implication are not favored and will never be presumed where the old and new statute[s] may well stand together." *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 404, 294 A.2d 546; *Fair Haven & Westville R. Co.* v. *New Haven,* 75 Conn. 442, 447, 53 A. 960; *Bissell* v. *Dickerson,* 64 Conn. 61, 29 A. 226.

In ruling that "[t]here is no conflict of authority here except what the defendant town has created" the trial court employed peculiar language since it stands to reason that a town cannot create a statutory conflict of authority. Although a town may be said to create a dispute, it is only the legislature through its statutory enactments and special acts which can create a conflict of authority or jurisdiction between a town and a district.

Such a legislatively created conflict is most evident in this case. It is precisely the conflict between the town's right to provide fire service pursuant to its charter and the District's right pursuant to the 1963 Special Act that is the controlling issue. If the 1963 Special Act permits the District to move into localities already served by the town, there is indeed a conflict of authority, and § 21-9 of the 1947 charter applies.

Furthermore, the trial court is without power to render a declaratory judgment where there is no room for reasonable question as to the rights of the parties. *Brennan* v. *Russell,* 133 Conn. 442, 445, 52 A.2d 308. The trial court's conclusion that the only conflict of authority was such as was *contrived*

by the town[1] had the effect of destroying the court's jurisdiction. Because that conclusion recognizes no bona fide and substantial issue in dispute between the parties or a substantial uncertainty of legal relationship requiring settlement, as required by § 309 (b) of the 1963 Practice Book, the court lacked jurisdiction to render a declaratory judgment.

Moreover, the conclusion of no conflict is contrary to the court's own finding[2] that there is actual bona fide and substantial uncertainty as to the legal relationships between the parties. Where the findings cannot support the conclusion reached, the judgment cannot stand. *D'Addario* v. *Commissioner of Transportation,* 172 Conn. 182, 186, 374 A.2d 163.

It was error for the court to refuse to consider and apply the provisions of the 1947 town charter; and, having found that there was no bona fide conflict of authority, it was error for the court to render a declaratory judgment.

In this opinion SIDOR, J., concurred.

---

[1] "There is no conflict of authority here except what the defendant town has created." "[The town] is not permitted to create a conflict and then point to a provision of its charter that such a conflict must be resolved in its favor."

[2] "There is a serious conflict between the parties hereto that vitally affects the public interest." "There are actual bona fide and substantial questions in dispute between the parties and a substantial uncertainty as to their legal relationship which requires settlement between the parties."