STATE OF CONNECTICUT *v.* ESTHER TURELLO ET AL.

BOGDANSKI, PETERS, HEALEY, WRIGHT and BRENNAN, Js.

Argued January 13—decision released March 17, 1981

*Edmund W. O'Brien,* for the appellant (defendant and third party plaintiff).

*Paige J. Everin,* assistant attorney general, with whom, on the brief was *Carl R. Ajello,* attorney general, for the appellee (plaintiff).

*David S. Williams,* with whom, on the brief, was *Allyn L. Brown, Jr.,* for the appellee (third party defendant).

PETERS, J. This appeal concerns liability to pay for medical care at a state chronic disease hospital. The plaintiff, the state of Connecticut, brought an action against the defendant, Esther Turello, alleging that she owed an unpaid balance of $9901.15 for her hospitalization at Uncas-on-Thames Hospital, a state hospital. The defendant then brought a third party action against the third party defendant, the Aetna Life Insurance Company, alleging its liability to pay the balance due to the state of Connecticut. Judgment for the state was rendered by stipulation. The third party action was tried on a stipulation of facts with exhibits attached thereto. The third party action resulted in a judgment for Aetna, from which Esther Turello now appeals.

The case was decided on the following stipulated facts: Esther Turello was hospitalized at Uncas-on-Thames, a state chronic disease hospital, from January 8, 1969, to January 24, 1970. During that time, she was the wife and dependent of Anthony P. Turello. He, in turn, was then an insured individual under certain medical insurance policies issued on his behalf by the Aetna Life Insurance Company. The amount of $9901.15 was conceded to have been due and owing to the state as hospital expenses incurred by Esther Turello for board and room in connection with her confinement.

The trial court concluded that the insurance policies issued by Aetna provided coverage for dependents like Esther only insofar as insured individuals like Anthony became legally liable to make pay-

ments on their behalf. The court assumed without argument, since the issue had not been vigorously pressed before it, that the applicable Connecticut statutes imposed no further legal liability on Anthony than that for which Aetna had already paid.[1] On the basis of its interpretation of the insurance contracts, rather than on a studied analysis of the statutes, the court, having determined that Anthony was not liable, rendered judgment for the third party defendant, Aetna.

Because our reading of the statutes persuades us that Anthony Turello was liable for his wife's medical costs in a state chronic disease hospital, we find error. We do not reach the question whether the contracts of insurance would have provided direct coverage for Esther as a dependent even had her husband not been personally obligated to pay the state for her care.

We recognize that the statutory claim was not fully explored in the trial court. Nevertheless, because the factual record is adequate for us to adjudicate the claim, and because it raises an issue of general importance, we have decided to exercise our discretion to consider it.

Principally at issue is General Statutes § 19-125, governing support of patients in the state chronic disease hospitals. Uncas-on-Thames is such a hospital. In 1969 and 1970 the statute provided: "Sec. 19-125. SUPPORT OF PATIENTS WITH CHRONIC ILLNESS OTHER THAN TUBERCULOSIS. Notwithstanding the provisions of sections 17-294 and 17-295, the maximum rate to be charged for the care of patients with

---

[1] The record indicates that Aetna had paid the $26.95 per week prescribed by General Statutes § 17-295.

chronic illness other than tuberculosis in the state chronic disease hospitals shall be determined by the commissioner of finance and control services, in consultation with the commissioner of health. The same persons and estates as are legally liable for support of patients in state humane institutions shall be liable for support of patients with chronic illness other than tuberculosis in said chronic disease hospitals in accordance with ability to pay and the commissioner shall make the determination of such ability, shall bill for and shall collect for care of such patients in the same manner and under the same procedures, terms and conditions as are authorized under the laws governing cases of patients in state humane institutions. If town paupers with chronic illnesses other than tuberculosis admitted to said chronic disease hospitals are deemed by the commissioner of health not to be in need of definitive hospital or restorative care, towns shall be liable for the support of such paupers after two weeks' notice from said commissioner."

This statute must be read in conjunction with the statutory provisions governing support of patients in state humane institutions. General Statutes §§ 17-294 and 17-295. At the time of Esther Turello's hospitalization, § 17-294 defined "state humane institution" as including "state mental hospitals and state training schools for mentally retarded persons." For patients in state humane institutions, § 17-295 (b) then provided that "the maximum rate to legally liable relatives as such shall not exceed twenty-six dollars and ninety-five cents per week . . . ." It is undisputed that Anthony Turello is a legally liable relative as that term is defined in § 17-295 (c).

The question of statutory construction that we must resolve is whether § 17-295's limitation upon the financial liability of legally liable relatives for treatment of patients at state humane institutions operates equally as a limitation of liability under § 19-125 for treatment at state chronic disease hospitals. The third party plaintiff, Esther Turello, arguing that the limitation is inapplicable, points to the prefatory language of § 19-125 distinguishing §§ 17-294 and 17-295, and to the absence of language in § 19-125 expressly incorporating the maximum rate structure of § 17-295. She notes further that such a cross-reference to the rates charged for care in state humane institutions does appear in at least one other related statute, General Statutes § 17-12c (b).[2] The third party defendant, Aetna, focuses on the second sentence of § 19-125, which provides for support in chronic disease hospitals by

---

[2] General Statutes § 17-12c (b), at the time of the defendant's hospitalization, provided: "(b) The maximum rate to be charged by the state for the institution care provided under subsection (a) of this section shall be the same as provided by law for care in state humane institutions. The same persons and estates as are legally liable for support of patients in state humane institutions shall be liable for support of persons cared for under this section in institutions, in accordance with ability to pay, and the commissioner of finance and control in consultation with the commissioner of health shall make the determination of such ability, shall bill for and shall collect for care of such patients in the same manner, and under the same procedures, terms and conditions as are authorized under the law governing cases of patients in state humane institutions, provided, in determining the exemption after sixteen years, credit shall be given for each year and major fraction thereof any person has been hospitalized or cared for in a nursing home as a victim of quadriplegia or total physical incapacity prior to inclusion under this program. The commissioner of finance and control shall determine the amount of the cost of home housekeeping or nursing care to be paid by the patient or liable persons based on the results of investigations by him of the financial circumstances of the liable persons."

"the same persons and estates as are legally liable for support of patients in state humane institutions . . . in the same manner and under the same procedures, terms and conditions as are authorized under the laws governing cases of patients in state humane institutions." Aetna argues that this reference to state humane institutions incorporates the limitation on liability that applies to care in state humane institutions.

The rules of statutory construction offer no irrefutable guides that definitively resolve the conflict before us. It is confusing to have the statute concerning chronic disease hospitals contain references that, in one and the same section, both exclude and include the rules governing humane institutions. Nonetheless we conclude that the argument of the third party plaintiff is the more persuasive, and that we should not read § 19-125 to incorporate § 17-295's limitation on liability. We do so in part because, in case of doubt, we should not interpret legislation to enlarge on a legislative exception. *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976); *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85 (1937); *Bickart* v. *Sanditz,* 105 Conn. 766, 772, 136 A. 580 (1927). As a general principle, the legislature has seen fit to impose the costs of hospitalization in state hospitals, not on the general taxpaying public, but rather on the patients, and their legally liable relatives, who benefit from the care therein provided and are able to pay. An exceptional rule of limited liability has been enacted for special cases, such as the care of the mentally disturbed or the mentally retarded, where long-term hospitalization might impose great financial burdens on the relatives of those needing such

extended treatment. We should await a clear legislative signal before extending this exception beyond its specific statutory bounds.

The text of § 19-125 supports a construction that differentiates, with respect to maximum rates, between chronic disease hospitals and humane institutions. The prefatory clause to § 19-125 expressly makes its provisions operative "notwithstanding the provisions of sections 17-294 and 17-295 [governing humane institutions]." This "notwithstanding" clause at the very least bars wholesale assimilation of the rules for humane institutions. The section looks to those rules for certain purposes, to define those who, like Anthony Turello, are legally liable for support of patients like Esther Turello, and to establish "the procedures, terms and conditions" for collection of payment from them. "The maximum rate to be charged," however, "shall be determined" by designated commissioners, "in accordance with ability to pay." Nowhere does the section place any further restrictions on the rates to be charged. Had the legislature intended that maximum rates in chronic disease hospitals be limited in the same manner as those in humane institutions, it could have added express language to that effect, as it did in § 17-12c (b). In order to give meaning, as we must, to every part of § 19-125; *McKinney* v. *Coventry,* 176 Conn. 613, 621, 410 A.2d 453 (1979); *Eighth Utilities District* v. *Manchester,* 176 Conn. 43, 50, 404 A.2d 898 (1978); *Levin-Townsend Computer Corporation* v. *Hartford,* 166 Conn. 405, 409, 349 A.2d 853 (1974); we conclude that the express authority of the designated commissioners to set maximum rates for the support of patients in chronic disease hospitals is not limited by the provision of § 17-295 (b).

We therefore construe § 19-125 to permit the state to obligate relatives like Anthony Turello to pay for the care received by their wives at a state chronic disease hospital such as Uncas-on-Thames. The third party defendant, Aetna, has never denied that it is legally liable for whatever medical care payments its insured, Anthony Turello, is obligated to pay. The judgment in the trial court, because it was based on an erroneous construction of the governing statutes, cannot stand.

There is error and the case is remanded for the rendering of judgment in favor of the third party plaintiff.

In this opinion the other judges concurred.