[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE #100 AND APPLICATION TO CONFIRM #106
The issue before the court is whether the court should CT Page 667 grant plaintiff's application to vacate or defendant's application to confirm the arbitrators' award.
On May 13, 1992, plaintiff, Hartford Fire Insurance Company, filed an application to vacate, modify and/or correct an arbitration award finding $600,000.00 of underinsured motorist (hereinafter "UM") coverage available under policy 31 PH 990389 (hereinafter the "subject policy") in favor of defendant third party beneficiary, Mark Marsala. In its application, plaintiff claims that the arbitrators erred in finding that the UM limits under the subject policy were equal to the liability limits of $300,000.00 rather than the requested reduced limits of $40,000.00. Plaintiff asserts that using this inflated figure, the arbitrators erroneously found stacked coverage of $600,000.00 rather than the proper $80,000.00. Plaintiff prays (1) that the award be vacated in that there was a valid written request for reduced UM coverage; and (2) that the award be modified and/or corrected to reflect the stacked UM limits as $80,000.00. In its memorandum of law filed June 15, 1992, plaintiff asserts that the court should find that the insured's wife signed the insured's name on a supplemental application requesting reduced UM coverage. Plaintiff further asserts that the request should be imputed to the insured based upon theories of agency, apparent agency, and estoppel.
On June 5, 1992, defendant, Mark Marsala, filed an application to confirm the arbitrators' award on the ground that plaintiff has failed to show any defects in the award or any remedy within the ambit of Connecticut's General Statutes. In his memorandum of law filed June 26, 1992, defendant asserts that the insured did not request the minimum UM coverage and that the insured's wife's unauthorized application for reduced benefits should not be imputed to the insured.
The following facts are undisputed for purposes of reviewing the issues briefed by the parties.
On October 28, 1988, Mark Marsala was a passenger in a vehicle operated by the alleged tortfeasor, Joseph G. Hasdusky. The Hasdusky vehicle was involved in a collision causing injuries to Mark Marsala. The Hasdusky vehicle had $50,000.00 in liability coverage with Nationwide that was exhausted by payment to Mark Marsala. Mark Marsala filed a CT Page 668 claim for underinsured motorist benefits under his father's automobile policy with Hartford Fire Insurance Company. The subject policy identifies the named insured as John S. Marsala (hereinafter the "insured"), Mark Marsala's father. The policy was opened on August 1, 1983 with liability of $300,000.00 and UM coverage of $40,000.00. In June or July of 1984, Hartford unilaterally increased the UM coverage to the liability limit of $300,000.00 to comply withPublic Act 83-461.[1] Hartford mailed to the insured a declaration page with the increased limits and a form CAF-1263-0 (hereinafter the "form"). The form provided notice of the new law requiring UM coverage at a limit equal to the liability limits of the policy unless the insured rejected the increased coverage. The form explained the purpose of UM coverage and recommended to the insured that the higher limit be kept. At the bottom of the form was a "Supplemental Application" for UM coverage and three selections:
 A. The minimum limit available. I reject any limit greater than the minimum.
 B. A limit equal to the liability limit of my policy.
 C. I am selecting the following limit $ ________.
The form provided blank lines labeled "Date" and "Signature of Named Insured." The form also stated, "Please return this form to your Hartford Agent." On July 6, 1984, Mary Ann Marsala, wife of the insured, checked the box preceding selection A on the supplemental application, dated the application, signed the insured's name, wrote on the application "The amount we already have," and returned the supplemental application portion of the form to Hartford.[2]
Upon receipt of the application, Hartford reduced the insured's UM coverage to $40,000.00. At the time of the collision and injury of Mark Marsala, the declaration pages of the subject policy provided for $300,000.00 of liability coverage and $40,000.00 of UM coverage.
Based upon these facts and upon the testimony and evidence taken at the arbitration hearings, the majority of arbitrators concluded as follows: CT Page 669
 D. 6. John Marsala never gave Mary Ann Marsala actual authority to act on his behalf with respect to the terms of insurance contracts.
 D. 7. While Mary Ann Marsala had authority to draw checks on the Marsala joint checking account, she did not have an independent right to act as agent for her husband.
 D. 8. Prior to executing the supplemental application, other than signing checks from the joint checking account for insurance premiums, Mary Ann Marsala never acted on behalf of John Marsala in his dealings with The Hartford.
 D. 9. Mary Ann Marsala did not have apparent authority to execute the supplemental application in the name of her husband, John Marsala.
 D. 10. The request for reduced coverage was not made by John Marsala, the named insured.
 D. 11. Mark Marsala was a third party beneficiary of John Marsala's contract with the Hartford.
 D. 12. John Marsala did not see any of the continuing declaration pages.
 D. 13. John Marsala and Mark Marsala are not estopped from claiming $600,000.00 coverage under Hartford policy 31 PH 990389.
Finding and Award dated May 6, 1992.
A. Scope of Review
On review of the statutorily mandated arbitration proceeding of General Statutes, Sec. 38-175c(a)(1), the uninsured motorist statute, "the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 191, 530 A.2d 171 (1989). Where the parties have not stipulated to the facts "the appropriate standard of review [of the arbitrators' factual findings] is CT Page 670 the `substantial evidence' test that prevails in review of factual determinations by administrative agencies . . . ." Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646,656, 591 A.2d 101 (1991). Substantial evidence would he found to exist if the record afforded "`a substantial basis of fact from which the fact in issue can be reasonably inferred. . . .'" Lawrence v. Kozlowski, 171 Conn. 705, 713,372 A.2d 110 (1976); Madrid Corporation v. Inland Wetlands Agency, 25 Conn. App. 446, 448 594 A.2d 1037 (1991). The decision must be sustained if the record discloses evidence that supports any of the reasons given for the decision. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,539-40, 525 A.2d 940 (1987).
"In determining whether . . . [a] finding is supported by `substantial evidence,' a court must defer to the [fact-finder's]. . . assessment of the credibility of the witnesses and to the [fact-finder's]. . . right to believe or disbelieve the evidence presented by any witness . . . ." Briggs v. State Employees Retirement Commission, 210 Conn. 214,217, 354 A.2d 292 (1989). "[T]he possibility . . . that two inconsistent conclusions may be drawn from the evidence does not prevent . . . finding from being supported by substantial evidence." Laufer v. Conservation Commission,24 Conn. App. 708, 716, 592 A.2d 392 (1991).
B. Underinsured Motorist Coverage
On July 5, 1983 the Connecticut General Assembly enacted Public Acts 1983, No. 83-461, amending General Statutes, Sec. 38-175c(a)(2). As amended, Sec. 38-175c(a)(2) mandates "uninsured motorist coverage with limits . . . equal to those purchased [by the insured] to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount . . . ." "All that is required. . . for an effective rejection is a writing signed by the named insured." Harlach v. Metropolitan Property Liability Ins. Co., 221 Conn. 185, 190, 602 A.2d 1007 (1992), quoting Silver v. Slusher, 770 P.2d 878, 883 (Okla. 1988), cert. denied, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). The legislative intent behind Sec. 38-175c(a)(2) is "that the decision to reduce uninsured motorist coverage by consumers be an informed one." Nationwide Mutual Ins. Co. v. Pasion,219 Conn. 764, 771, 594 A.2d 468 (1991).[3]
CT Page 671
C. Agency
1. Actual Authority
In support of its application to vacate, plaintiff argues that in executing the written request for reduced UM coverage, Mary Ann Marsala was acting as an authorized agent of the named insured, John Marsala. Plaintiff asserts that Mary Ann Marsala has acted as the insured's agent in all matters dealing with family mail, finances and insurance in particular.
In support of his application to confirm, defendant asserts that the insured did not authorize his wife to act on his behalf.
"A husband or wife can be authorized to act for the other party to the marital relation." Restatement (Second), Agency, Sec. 22. "`An agency or assent may be, and often is more readily presumed from the acts and conditions of a wife, than in ordinary cases.'" Brown v. Woodward, 75 Conn. 254,260. (1902). However, "[m]arital status cannot in and of itself prove the agency relationship." Botticello v. Stefanovicz, 177 Conn. 22, 26, 411 A.2d 16 (1979). "Moreover, the fact that one spouse tends more to business matters than the other does not, absent other evidence of agreement or authorization, constitute the delegation of power as to an agent." Id., 27.[4]
An agency relationship may not be found based solely on the marital relationship and, therefore, the court must look to the general law of agency.
 `Agency is defined as `the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . .' Restatement (Second), 1 Agency, Sec. 1.' McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, 322, 321 A.2d 456 (1973). Thus, the three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) CT Page 672 an understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), 1 Agency, Sec. 1, comment b (1958).' Botticello v. Stefanovicz, 177 Conn. 22, 25, 411 A.2d 16 (1979); see also Long v. Schull, 184 Conn. 252, 256, 439 A.2d 975 (1981).
Beckenstein v. Potter Carrier, Inc., 191 Conn. 120, 132-33,464 A.2d 6 (1984).
 In addition, `[a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal.' (Citations omitted.) Leary v. Johnson, 159 Conn. 101, 105-106, 267 A.2d 658 (1970). Finally, the labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the `operative terms' of their agreement or understanding.
Id., 133-34.
"It is true that a principal may delegate to an agent all that he himself can do except acts `peculiarly personal' or acts `regulated by statute which are required to be performed personally.'" State v. Tedesco, 175 Conn. 279,287, 397 A.2d 1352 (1978). (Citations omitted.)[5] See Restatement 2d, Agency, Sec. 17.
 Unless a statute provides to the contrary; see, e.g., General Statutes, Sec. 20-325a(b); Thornton Real Estate, Inc. v. Lobdell, 184 Conn. 228, 230, 439 A.2d 947 (1981); principals may act through agents; Restatement (Second), Agency (1958), Sec. 17; and may appoint agents `by written or spoken words or other conduct.' Restatement (Second), Agency (1958), Sec. 26.
Fairfield County National Bank v. DeMichely, 185 Conn. 463,470-71, 441 A.2d 569 (1981).
"The existence of an implied agency is essentially a question of fact the proof of which is generally found in the acts and conduct of the parties." (Citation omitted.) Leary v. Johnson, 159 Conn. 101, 105, 267 A.2d 658 (1970). CT Page 673 "`Implied authority is actual authority circumstantially proved. It is authority which the principal intended the agent to possess.'" Czarnecki v. Plastics Liquidating Co.,179 Conn. 261, 268-69, 425 A.2d 1289 (1979), quoting 2 Fletcher, op. cit., Sec. 438. The burden of proving agency is on the party contesting its existence. Botticello v. Stefanovicz, supra. "Whether a person is an agent and whether as agent, she is acting within the scope of her authority, are questions of fact." (Citations omitted.) Cohen v. Meola, 184 Conn. 218, 220, 439 A.2d 966 (1981).
Because a finding of agency is a question of fact, this court must determine whether there is substantial evidence in the record to support the arbitrators' factual determinations.
Ilona Saladino, an employee of Hartford Insurance Group, testified on October 7, 1991 as follows: In 1984 she was employed in the personnel lines department and was familiar with the new legislation concerning UM coverage and with the procedures used in processing requests for UM coverage. Insureds were sent renewal policies that automatically increased UM coverage equal to the amount of their liability. Along with that policy was a form giving the insured the opportunity to reject the increased limit. When the requests came in, it was not standard practice to verify the insured's signature. It was necessary, however, that the request he signed. After the request was received, the insurer would send out an amended declaration.
The record of the arbitration proceeding from September 5, 1991 discloses the following evidence. John Marsala, Sr., the insured, testified to the following facts: He never received notice of the change in Connecticut's UM law or that he was required to make some elections. He did not see the supplemental application for UM coverage until about a year after the collision. The signature on the supplemental application purporting to be his is in his wife, Mary Ann Marsala's handwriting. His wife pays all the bills and sometimes opens the insured's mail; she has been doing so for forty-two years. When his wife opened the bills, he would not look at them. He never saw the supplemental application or talked to his wife about it. His wife had never signed his name prior to her signing the supplemental application. The insured purchases the insurance and his wife "takes care CT Page 674 of it."
Mary Ann Marsala testified as follows: She does not remember seeing the supplemental application. The signature, date, and the words "[t]he amount we already have" as written on the supplemental application are in her handwriting. She "guesses" that the check mark in box "A" is in her handwriting, but she is not certain. She never signed her husband's name prior to signing the supplemental application. She takes care of the checks and all financial matters. She never discussed UM coverage with her husband, with the plaintiff insurer, or with the insurance agent. She usually gives her husband his mail.
Although there is evidence in the record that John Marsala, the insured, consented to his wife acting for him in financial matters, there is also testimony in the record from which the lack of authority to sign the insured's name may be inferred. It is clear that the court may find and does find that there is a substantial basis for confirming the finding by the majority of arbitrators that an actual agency did not exist.
2. Apparent Authority
Plaintiff argues in further support if its application to vacate that Mary Ann Marsala had apparent authority to reject the higher limit of UM coverage. Plaintiff asserts that the insured held Mary Ann Marsala out to the plaintiff as having the authority to sign the written request on his behalf and therefore should be bound by her actions.
Defendant asserts in support of his application to confirm that the insured did nothing to lead the plaintiff to believe that the insured's wife was authorized to act as the insured's agent in this matter.
 `Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses.' Lewis v. Michigan Millers Mutual Ins. Co., 154 Conn. 660, 665, 228 A.2d 803 (1967); see Restatement (Second), 1 Agency, Sec. 8 (1958). Apparent authority thus must be determined by the acts of the principal CT Page 675 rather than by the acts of the agent. Nowak v. Capitol Motors, Inc., 158 Conn. 65, 69, 255 A.2d 845 (1969).' Botticello v. Stefanovicz, supra, 25-26 n. 2; see also Cohen v. Holloways', Inc., 158 Conn. 395, 407, 260 A.2d 573 (1969). Furthermore, the party seeking to impose liability upon the principal must demonstrate that it acted in good faith based upon the actions or inadvertences of the principal Cohen v. Holloways', Inc., supra, 407; Lewis v. Michigan Millers Mutual Ins. Co., supra, 665-66.
Beckenstein v. Potter Carrier, Inc., supra, 140-41.
 `[T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority.'
(Citations omitted.) Lettieri v. American Savings Bank,182 Conn. 1, 8, 437 A.2d 822 (1980). "The issue of apparent authority is one of fact requiring the trier of fact to evaluate the conduct of the parties in light of all of the surrounding circumstances." Id., 9.
Comment a of the Restatement (Second) Agency, Sec. 27 provides:
 For apparent authority there is the basic requirement that the principal he responsible for the information which comes to the mind of the third person, similar to the requirement for the creation of authority that the principal be responsible for the information which comes to the agent. Thus, either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief. The information received by the third person may come directly from the principal by letter or word CT Page 676 of mouth, from authorized statements of the agent, from documents or other indicia of the authority given by the principal to the agent, or from third persons who have heard of the agent's authority through authorized or permitted channels of communication.
 So, too, a person who permits another to do an act in such a way as to establish in a community a reputation for having authority to act, either by directing the agent so to represent, or by directing him to act and doing nothing to prevent the spread of such information by the agent or by others, creates apparent authority with respect to those who learn of the reputation.
Comment b of section 27 provides:
 As authority can be created only by the principal's manifestation to the agent, so apparent authority exists only as to those who learn of a manifestation from conduct of the principal for which he is responsible.
 Until there has been a communication to a particular person, and until that person learns facts from which he reasonably infers that the agent is authorized, there is no apparent authority as that word is here used. Thus, if the agent has the reputation in a community of having authority so that as to all the persons in the community he would have apparent authority, he nevertheless has no apparent authority as to a stranger who does not know of the reputation or the past conduct of the agent.
In this matter, the court finds that there is substantial evidence in the record that (1) the insured did not hold his wife out to the plaintiff insurer as possessing the authority to act in signing the insured's name; (2) the insured did not knowingly permit his wife to have such authority; (3) the insured did not learn of his wife's actions until approximately a year after the automobile collision; and (4) that an apparent agency was not created. CT Page 677
3. Estoppel
Plaintiff further argues in support of its application to vacate that the insured should be estopped from claiming that Mary Ann Marsala's request for reduced UM coverage was ineffectual. Plaintiff asserts that the insured had actual or imputed knowledge that his UM coverage was increased to $300,000.00 and thereafter was reduced to $40,000.00. Plaintiff further asserts that the insured remained silent thereby intentionally or negligently misleading the plaintiff. Defendant argues that he had no knowledge of the change in the law or the change in his coverage until a year after the automobile collision.
 Under Connecticut law, `any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury . . . .' (Citations omitted.) O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729 (1990). It is the burden of the party asserting a claim of estoppel to establish the existence of the elements essential to an estoppel; see Cleary v. Zoning Board, 153 Conn. 513, 518, 218 A.2d 523 (1966); and whether that burden has been satisfied in a particular case is an issue of fact. Hanover Ins. Co. v. Fireman's Fund Ins. Co., 217 Conn. 340, 350, 586 A.2d 567
(1991); New York Annual Conference v. Fisher, 182 Conn. 272, 300, 438 A.2d 62 (1980).
Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 699,590 A.2d 957 (1991). "The party asserting estoppel `must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.'" Eighth Utilities District v. Manchester,176 Conn. 43, 53, 404 A.2d 898 (1978). "[L]ike apparent authority, [estoppel] is based on the idea that one should be bound by what he manifests irrespective of fault . . . ." Restatement (Second) Agency, Sec. 8, comment d, p. 33. "Estoppel is dealt with as a form of deceit, in which the CT Page 678 remedy is to hold the speaker to the truth of his statements . . . ." Id. One may be estopped by his silence for "failing to reveal the truth if he knows that another is acting or will act under a misapprehension." Id., Sec. 8, comment c, p. 40. "[H]is duty to give information is a duty of due care." Id., comment d, p. 41.
In addition to the testimony referenced above in this memorandum, the following testimony is relevant to the insured's knowledge of the facts. Brian Schmidt testified on October 7, 1991 and January 3, 1992 as follows: In the summer of 1984, the insured's son, John Marsala, Jr., called Schmidt to discuss UM coverage for himself and his father, John Marsala, Sr., the insured in the present action. John, Jr. said that both he and his father received the supplemental applications for UM converge. Schmidt told John, Jr. that John's father must sign his application. Schmidt further testified that he had no direct discussion with the insured, John Marsala, Sr., after the new Connecticut legislation in 1984, nor did he communicate with Mary Ann Marsala.
On January 3, 1992, John Marsala, Jr. testified as follows: He called Brian Schmidt to talk about UM coverage; however, that call was made in 1990 after his brother, Mark Marsala's accident. Nobody was present during that call nor did anyone request him to call. He further testified that he did not have a conversation with his father about UM coverage.
It is clear that the court may find that there is substantial evidence in the record to support the arbitrators' factual findings that the insured should not be estopped from denying liability. The court can find and does find that there is substantial evidence that (1) the insured did not calculate or intend the plaintiff to believe that the insured's wife was his agent for purposes of requesting reduced UM coverage; and (2) the insured was unaware that the plaintiff was acting under such a misapprehension. Accordingly, it is found that the court should confirm the arbitrators' findings that the elements of estoppel do not exist.
The application to confirm the arbitrators' award is granted and the plaintiff's motion to vacate, modify or CT Page 679 correct is denied.
McGrath, J.