[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On June 30, 1989, L R Realty (hereinafter "L 
R") gave a mortgage note and a deed to Connecticut National Bank (hereinafter "CNB") for a loan to acquire land in Colchester for the development of a shopping center. L R is a partnership composed of Raymond G. LeFoll and Gail L. LeFoll (hereinafter "individual plaintiffs"). L R and the individual plaintiffs allege that part of the mortgage transaction was an oral agreement between L R and CNB wherein CNB agreed to subordinate its mortgage to a subsequent construction mortgage that would be used to secure a loan for the construction of the proposed shopping center.
The plaintiffs further allege that in reliance on this oral agreement and with the knowledge of CNB, the plaintiffs reached an agreement with Mechanics Savings Bank (hereinafter "construction lender") for a construction loan. The plaintiffs further allege that the agreement between the plaintiffs and the construction lender required CNB to subordinate its mortgage to the construction mortgage. The closing of the construction mortgage was scheduled for July 17, 1991. The plaintiffs allege that CNB refused to subordinate its mortgage to the construction lender's CT Page 2855 mortgage despite an oral confirmation of the subordination agreement given on or about October 26, 1990 by CNB's loan officer and a written confirmation given on October 26, 1990. CNB's refusal to subordinate its mortgage to the construction mortgage apparently lead to the construction lender withdrawing its loan offer.
On September 28, 1992, L R and the individual plaintiffs filed an eight count revised complaint against CNB. In count two, the plaintiffs allege that in reliance on the oral representations of CNB, they entered into the construction loan agreement with the construction lender. Based on these allegations, the plaintiffs assert a claim of promissory estoppel against CNB. In count three, the plaintiffs allege that CNB acted in bad faith and in breach of its duty to the plaintiffs arising from the subordination agreement. In count seven, the plaintiffs allege that CNB had knowledge of the construction loan between the plaintiffs and the construction lender and intentionally and without justification interfered with said relationship between the plaintiffs and the construction lender by refusing to subordinate its loan to the construction mortgage. In count eight, the plaintiffs allege several violations of the Connecticut Unfair Trade Practices Act (hereinafter "CUTPA").
The plaintiffs claim punitive damages based on the allegations in counts three, four, six and seven. (Counts four and six have been stricken by agreement.) The damages alleged include lost financing, rental income and development expenses and added interest costs.
On November 12, 1992, CNB filed a motion to strike counts two, four, six and eight of the complaint, the plaintiffs' prayer for punitive damages in relation to counts three, four, six and seven, and the plaintiffs' prayer for attorney's fees in relation to counts three through seven. Counts four and six and the prayer for attorney's fees for counts three through seven were later stricken by agreement. Remaining was the motion to strike counts two, seven and eight and the prayer for punitive damages in regard to counts three and seven.
In its motion to strike and accompanying memorandum of law, CNB argues that counts two, seven and eight and the claim for punitive damages as to counts three and seven CT Page 2856 should be stricken because they fail to state a cause of action for which relief can be granted. Specifically, as to the claim for promissory estoppel in count two, CNB argues that it is legally insufficient because the plaintiffs fail to allege a clear and definite promise which could reasonably be expected to induce reliance. As to count seven alleging tortious interference with a contract, CNB argues that the plaintiffs have failed to allege tortious conduct by CNB. As to count eight, the CUTPA claim, CNB argues that CUTPA does not apply to banks. As to the claim for punitive damages, CNB argues that the plaintiffs have not alleged that CNB's conduct was sufficiently egregious to support a claim for punitive damages.
The plaintiffs submitted a memorandum of law in opposition to the motion to strike arguing that their causes of action for promissory estoppel and tortious interference and their claims for punitive damages are sufficiently supported by their allegations. The plaintiffs further argue that the majority of the superior court decisions apply CUTPA to banks.
DISCUSSION
The purpose of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). In ruling upon a motion to strike the court must take as admitted all well pled facts and construe them in a manner most favorable to the plaintiff. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). If a pleading contains the necessary elements of a cause of action, it will survive a motion to strike. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206,218-19, 520 A.2d 217 (1987).
I. Count two — promissory estoppel.
 Under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise. CT Page 2857
Finley v. Aetna Life Casualty, 202 Conn. 190, 205,520 A.2d 208 (1987). "A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which the promisor could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987).
In count two, the plaintiffs allege that:
 The Plaintiffs entered into said transaction based upon the oral representations of the Defendant Bank that this loan and mortgage would be subordinated to the lien of the first construction mortgage for said development.
The plaintiffs further allege that these oral representations were confirmed in a written letter from the bank through its loan officer who made the oral representations. The plaintiffs also allege that in reliance on these oral representations, the plaintiffs reached an agreement with the construction lender for a construction loan that was contingent on CNB subordinating its mortgage to the construction lender's mortgage.
The defendant argues that the allegations of an oral agreement do not include clear and definite terms to support a claim of promissory estoppel. The actual promise to subordinate rather than any particular term of the subordination agreement is what the plaintiffs allege that they relied upon. viewing the facts in a light most favorable to the plaintiffs, they have sufficiently alleged the existence of a clear and definite oral promise by CNB to subordinate its loan to a construction loan. Therefore, the court hereby denies CNB's motion to strike count two.
II. Count seven — tortious interference.
The elements of tortious interference with a contract are (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the intent to interfere with the contractual or beneficial relationship; and (4) as a proximate consequence of that the plaintiff suffered actual CT Page 2858 loss. Solomon v. Aberman, 196 Conn. 359, 364, 493 A.2d 193
(1985).
 For a plaintiff successfully to prosecute such an action [for tortious interference] it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or, molestation . . . or that the defendant acted maliciously. (citations omitted.)
Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-02,374 A.2d 179 (1977).
CNB argues that the plaintiffs have failed to allege facts that show tortious conduct. In count seven, the plaintiffs allege that the CNB intentionally interfered with the plaintiffs' loan agreement with the construction lender by refusing to subordinate its mortgage to the construction mortgage in violation of the alleged oral subordination agreement. The plaintiffs further allege in count seven of their revised complaint that CNB's refusal to subordinate its mortgage "thwarted, prevented and interfered with plaintiffs' ability to obtain a first construction mortgage for its development . . . of the property." While the plaintiffs allege that CNB intentionally interfered with the plaintiffs' loan agreement with the construction lender, the plaintiffs have not alleged that CNB's conduct was tortious insofar as being, for example, malicious or fraudulent. Therefore, the court hereby grants CNB'S motion to strike count seven on the ground that the plaintiffs' allegations are legally insufficient to support a cause of action for tortious interference.
III. Count eight — CUTPA.
The appellate courts have not resolved the issue of whether CUTPA applies to banking activities. See Gaynor v. Union Trust Co., 216 Conn. 458, 482, 582 A.2d 190 (1990). There is also a split of opinion in the superior court as to whether CUTPA applies to banks. Some courts have held that CUTPA does not apply to banks. See, e.g. Bristol Savings Bank v. Sattler, 4 CSCR 351 (March 29, 1989, Aronson, J.); CT Page 2859 People's Sank v. Horesco, 1 CSCR 62 (January 22, 1986, Jacobson, J.) These courts reason that since Connecticut courts are guided in the interpretation of CUTPA by the interpretations of the Federal Trade Commission Act by the federal courts and the Federal Trade Commission General Statutes 42-110a; and that since banks are exempt from the FTCA, then banks are exempt from CUTPA. Sattler, supra.
However, the majority of superior court decisions have held that CUTPA applies to banks. Hurlburt v. North Atlantic Planning Corp. Superior Court, Judicial District of Hartford/New Britain at New Britain, Docket No. CV190-0440427S (January 6, 1992, Byrne, J.) See, e.g. Economic Development Associates v. Cititrust, 3 Conn. L. Rptr. 403 (April 15, 1991, Dranginis, J.); Financial Federal Saving Bank v. Breen,5 CSCR 974 (October 29, 1990, Freed, J.); Moscariello v. Centerbank, 4 Conn. L. Rptr. 241 (June 24, 1991, Gaffney, J.). These courts reason that the "burden of proving an exemption from CUTPA . . . is on the party claiming the exemption;" General Statutes 42-110c(b) and that courts should not "interpret legislation to enlarge on a legislative exception." State v. Turello, 183 Conn. 330, 335,439 A.2d 364 (1981). Therefore, since CUTPA does not have an explicit exemption for banks; Ebersol McCormick v. Torrington Savings Bank, 4 CSCR 499, 500 (May 26, 1989, Pickett, J.): the courts should not read one into CUTPA for banks. Hurlbert, supra.
The court finds that the cases holding that CUTPA applies to banks have the better reasoned view. Therefore, count eight of the plaintiffs' complaint is legally sufficient and the court hereby denies CNB's motion to dismiss this count.
IV. Punitive damages.
"Punitive damages are not ordinarily recoverable for breach of contract." Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 127, 222 A.2d 220 (1966). Punitive damages are available where the plaintiff alleges reckless indifference to the rights of others, intentional, wanton and malicious injury, evil motive or violence. Id., 128.
CNB moved to strike the plaintiffs' claim for punitive damages for counts three, four, six and seven. CT Page 2860 Counts four and six were stricken by agreement and counts three and seven remain. Count seven is stricken on the grounds stated above. Therefore, the allegation in count three must support plaintiffs' claim for punitive damages.
In count three, plaintiffs allege the following in support of their claim of bad faith and breach of duty regarding CNB's alleged oral subordination agreement with the plaintiffs:
 Defendant's refusal to subordinate its loan to the construction loan was an act of bad faith and breach of the defendant's duty owed to plaintiffs through the subordination agreement. Defendant bank maintained its refusal even after plaintiffs had the loan officer responsible for the June 30, 1989 loan confirm that the bank had agreed to subordinate its loan.
 Defendant bank's continued refusal was an act of bad faith and breach of the bank's duty to the plaintiffs.
The plaintiffs further allege in count three that as a result of defendant's willful acts of bad faith, the plaintiffs suffered various damages.
While the plaintiffs characterized CNB's actions as intentional in count three, the allegations do not rise to the level of wantonness and maliciousness necessary to support a claim for punitive damages. Accordingly, the court hereby grants CNB's motion to strike the plaintiffs' claim for punitive damages as to count three.
CONCLUSION
The court hereby denies CNB's motion to strike the plaintiffs' second count because the allegations are sufficient to support a cause of action for promissory estoppel.
The court grants CNB's motion to strike count seven because the plaintiffs' allegations do not support a cause of CT Page 2861 action for tortious interference.
The court hereby denies CNB's motion to strike count eight because the court finds that CUTPA can be applied to banks.
Finally, the court grants CNB's motion to strike the plaintiffs' claim for punitive damages as to count three because the allegations set forth therein do not support said
Hurley, J.