ANTHONY BOTTICELLO *v.* WALTER STEFANOVICZ ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, JS.

Argued December 15, 1978—decision released March 6, 1979

*Paul B. Groobert,* for the appellants (defendants).

*Edmund W. O'Brien,* with whom was *Laurence P. Rubinow,* for the appellee (plaintiff).

PETERS, J. This case concerns the enforceability of an agreement for the sale of real property when that agreement has been executed by a person owning only an undivided half interest in the property. The plaintiff brought an action for specific per-

formance against the defendants to compel convey-
ance of their land in accordance with the terms of
a lease and option-to-purchase agreement signed by
one of the defendants. The defendants interposed
numerous defenses, including a motion for summary
judgment based upon the Statute of Frauds. This
motion was denied and, after a full trial before the
court, all the remaining issues were found for the
plaintiff against both defendants. The defendants
are now appealing from the consequent entry of a
judgment ordering them to convey the real property
in question to the plaintiff by warranty deed in
consideration for the payment of $74,700.

The finding of the trial court discloses the follow-
ing undisputed facts: The defendants, Mary
and Walter Stefanovicz (hereinafter "Mary" and
"Walter") in 1943 acquired as tenants in common
a farm situated in the towns of Colchester and
Lebanon. In the fall of 1965, the plaintiff, Anthony
Botticello, became interested in the property. When
he first visited the farm, Walter advised him that
the asking price was $100,000. The following Jan-
uary, the plaintiff again visited the farm and made
a counteroffer of $75,000. At that time, Mary stated
that there was "no way" she could sell it for that
amount. Ultimately the plaintiff and Walter agreed
upon a price of $85,000 for a lease with an option
to purchase; during these negotiations, Mary stated
that she would not sell the property for less than
that amount.

The informal agreement was finalized with the
assistance of counsel for both Walter and the
plaintiff. The agreement was drawn up by Walter's
attorney after consultation with Walter and the
plaintiff; it was then sent to, and modified by,

the plaintiff's attorney. The agreement was signed by Walter and by the plaintiff. Neither the plaintiff nor his attorney, nor Walter's attorney, was then aware of the fact that Walter did not own the property outright. The plaintiff, although a successful businessman with considerable experience in real estate never requested his attorney to do a title search of any kind, and consequently no title search was done. Walter never represented to the plaintiff or the plaintiff's attorney, or to his own attorney, that he was acting for his wife, as her agent. Mary's part ownership came to light in 1968, when a third party sought an easement over the land in question.

Shortly after the execution of the lease and option-to-purchase agreement, the plaintiff took possession of the property. He made substantial improvements on the property and, in 1971, properly exercised his option to purchase. When the defendants refused to honor the option agreement, the plaintiff commenced the present action against both Mary and Walter, seeking specific performance, possession of the premises, and damages.

The trial court found the issues for the plaintiff and ordered specific performance of the option-to-purchase agreement. In their appeal, the defendants make essentially two claims: (1) that Mary was never a party to the agreement, and its terms may therefore not be enforced as to her; and (2) that the provisions of the purchase money mortgage contained in the option-to-purchase agreement were so ambiguous, indefinite, and uncertain that the option failed to satisfy the Statute of Frauds and was therefore unenforceable. These claims will be considered separately.

## I

The plaintiff alleged, and the trial court agreed, that although Mary was not a party to the lease and option-to-purchase agreement, its terms were nonetheless binding upon her because Walter acted as her authorized agent in the negotiations, discussions, and execution of the written agreement. The defendants have attacked several findings of fact and conclusions of law, claiming that the underlying facts and applicable law do not support the court's conclusion of agency.[1] We agree.

Agency is defined as " 'the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . .' Restatement (Second), 1 Agency § 1." *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 322, 321 A.2d 456 (1973). Thus, the three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), 1 Agency § 1, comment b (1958).[2]

---

[1] The defendants have also assigned as error the refusal of the trial court to find certain facts set forth in the draft finding which are claimed to be admitted or undisputed. We have examined each of the facts sought to be added to the finding and conclude that the finding is not subject to material correction. One of the facts sought to be added is already included in the finding, and the others will not affect the result. See *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 249, 377 A.2d 302 (1977); *Bowen* v. *Ives,* 171 Conn. 231, 235n, 368 A.2d 82 (1976).

[2] Agency may be either actual or apparent. "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his

The existence of an agency relationship is a question of fact. *Conte* v. *Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 124, 374 A.2d 144 (1976); *Cleaveland* v. *Gabriel,* 149 Conn. 388, 394, 180 A.2d 749 (1962). The burden of proving agency is on the plaintiff; *Cyclone Fence Co.* v. *McAviney,* 121 Conn. 656, 659, 186 A. 635 (1936); and it must be proven by a fair preponderance of the evidence. *Leary* v. *Johnson,* 159 Conn. 101, 105, 267 A.2d 658 (1970); *Iodice* v. *Rusnak,* 143 Conn. 244, 247, 121 A.2d 275 (1956). Marital status cannot in and of itself prove the agency relationship. *Commission on Human Rights & Opportunities* v. *Veneri,* 157 Conn. 20, 24, 244 A.2d 401 (1968); *Iodice* v. *Rusnak,* supra, 247; *Cyclone Fence Co.* v. *McAviney,* supra, 659. Nor does the fact that the defendants owned the land jointly make one the agent for the other. *Commission on Human Rights & Opportunities* v. *Veneri,* supra, 24.

The facts set forth in the court's finding are wholly insufficient to support the court's conclusion that Walter acted as Mary's authorized agent in the discussions concerning the sale of their farm and in the execution of the written agreement. The court's conclusion must be tested by the finding and not by the evidence. *Spicer* v. *Spicer,* 173 Conn. 161, 163, 377 A.2d 259 (1977). The finding indicates that when the farm was purchased, and when the

agent possesses." *Lewis* v. *Michigan Millers Mutual Ins. Co.,* 154 Conn. 660, 665, 228 A.2d 803 (1967); see Restatement (Second), 1 Agency § 8 (1958). Apparent authority thus must be determined by the acts of the principal rather than by the acts of the agent. *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 69, 255 A.2d 845 (1969). Since the plaintiff has admitted that he did not know of Mary's interest in the land at the time the agreement was signed, her actions cannot form the basis for a finding of apparent authority, and the plaintiff has not pursued that theory.

couple transferred property to their sons, Walter handled many of the business aspects, including making payments for taxes, insurance, and mortgage. The finding also discloses that Mary and Walter discussed the sale of the farm, and that Mary remarked that she would not sell it for $75,000, and would not sell it for less than $85,000.[3] A statement that one will not sell for *less than* a certain amount is by no means the equivalent of an agreement to sell for that amount. See Restatement (Second), Contracts § 25, esp. illustration 4 (1973). Moreover, the fact that one spouse tends more to business matters than the other does not, absent other evidence of agreement or authorization, constitute the delegation of power as to an agent. What is most damaging to the plaintiff's case is the court's uncontradicted finding that, although Mary may have acquiesced in Walter's handling of many business matters, Walter *never* signed any documents as agent for Mary prior to 1966. Mary had consistently signed any deed, mortgage, or mortgage note in connection with their jointly held property.

In light of the foregoing, it is clear that the facts found by the court fail to support its conclusion that Walter acted as Mary's authorized agent, and the conclusion therefore cannot stand. See *White Oak Excavators, Inc.* v. *Board of Tax Review,* 169 Conn. 253, 256, 363 A.2d 134 (1975); *Barrett-Nonpareil, Inc.* v. *Stoll,* 168 Conn. 79, 82, 357 A.2d 481 (1975).

---

[3] References by the plaintiff to findings concerning the couple's acquisition of property in Florida, and the granting of an easement over their farm, both in 1968, are irrelevant to the question whether Walter was acting as Mary's agent at the time of the agreement in question, in 1966.

The plaintiff argues, alternatively, that even if no agency relationship existed at the time the agreement was signed, Mary was bound by the contract executed by her husband because she ratified its terms by her subsequent conduct. The trial court accepted this alternative argument as well, concluding that Mary had ratified the agreement by receiving and accepting payments from the plaintiff, and by acquiescing in his substantial improvements to the farm. The underlying facts, however, do not support the conclusion of ratification.

Ratification is defined as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account." Restatement (Second), 1 Agency § 82 (1958). Ratification requires "acceptance of the results of the act with an *intent* to ratify, and with *full knowledge of all the material circumstances*." (Emphasis added.) *Ansonia* v. *Cooper,* 64 Conn. 536, 544, 30 A. 760 (1894); see *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 411, 260 A.2d 573 (1969); *Bond Rubber Corporation* v. *Oates Bros., Inc.,* 136 Conn. 248, 251, 70 A.2d 115 (1949).

The finding neither indicates an intent by Mary to ratify the agreement, nor establishes her knowledge of all the material circumstances surrounding the deal. At most, Mary observed the plaintiff occupying and improving the land, received rental payments from the plaintiff from time to time, knew that she had an interest in the property, and knew that the use, occupancy, and rentals were pursuant to a written agreement she had not signed. None of these facts is sufficient to support the conclusion that Mary ratified the agreement and thus bound herself to its terms. It is undisputed that

Walter had the power to lease his own undivided one-half interest in the property; *Commission on Human Rights & Opportunities* v. *Veneri, supra,* 24; see General Statutes § 47-14c; and the facts found by the trial court could be referable to that fact alone. Moreover, the fact that the rental payments were used for "family" purposes indicates nothing more than one spouse providing for the other.

The plaintiff makes the further argument that Mary ratified the agreement simply by receiving its benefits and by failing to repudiate it. See Restatement (Second), 1 Agency § 98 (1958). The plaintiff fails to recognize that before the receipt of benefits may constitute ratification, the other requisites for ratification must first be present. "Thus if the original transaction was not purported to be done on account of the principal, the fact that the principal receives its proceeds does not make him a party to it." Restatement (Second), 1 Agency § 98, comment f (1958). Since Walter at no time purported to be acting on his wife's behalf, as is essential to effective subsequent ratification; *Cyclone Fence Co.* v. *McAviney, supra,* 661; Mary is not bound by the terms of the agreement, and specific performance cannot be ordered as to her.

## II

Our conclusion that there can be no recovery against Mary is not dispositive of the rights that the plaintiff may have against Walter. A person who contracts to convey full title to real property is not himself excused from performance, or immune from liability for breach, because of his inability to convey more than an undivided half interest in the

property. *Schneidau* v. *Manley,* 131 Conn. 285, 288, 39 A.2d 885 (1944); see *Foster* v. *Civale,* 134 Conn. 469, 474, 58 A.2d 520 (1948). Two issues must be resolved in ascertaining the liability of Walter. Was the plaintiff's agreement of purchase sufficiently certain to warrant specific performance? If so, what remedies are appropriate in the circumstances?

The issue about the specificity of the option-to-purchase agreement arises out of arguable uncertainty as to the terms for payment. The agreement signed by the plaintiff and Walter provided for a down payment of 29 percent of the purchase price with the balance to be paid by a twenty-year purchase money mortgage.[4] The defendants allege that the provisions of the purchase money mortgage are ambiguous, uncertain, and indefinite, and fail therefore to satisfy the Statute of Frauds, General Statutes § 52-550. In particular, the defendants assert that the mortgage provision does not specify when the quarterly payments are to commence, nor does it state the amount of each payment or a method for computing the amount. Thus,

[4] The relevant provisions of the agreement are as follows: "Article 5. As a further consideration for the rents, agreements and conditions herein contained, the Lessee shall have, during the original term of this lease or any renewal thereof, the option to purchase said demised premises . . . for the sum of eighty-five thousand ($85,000.00) dollars under the following terms: 29% of said purchase price, in cash, the balance on said purchase price to be by a purchase money mortgage for a period of twenty (20) years, payable quarterly, with interest at the rate of five percent (5%) per annum on the unpaid balance; which note in addition hereto shall contain the usual provision in regard to the payment of taxes, insurance, costs of collection and attorney's fees and shall give the said Lessee the right to anticipate any and all payments. Provided, further, that the Lessee shall receive a credit of an amount equal to the rent paid under this lease against the purchase price in the event this option shall be exercised."

it is claimed, it is unclear whether the quarterly payments are to be equal in amount as to principal and varying as to interest, or equal as to the combined payments on principal and interest.

We have held that for a written agreement for the sale of real estate to be enforceable, it must "state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof . . . and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." *Montanaro* v. *Pandolfini,* 148 Conn. 153, 157, 168 A.2d 550 (1961); *Santoro* v. *Mack,* 108 Conn. 683, 687-88, 145 A. 273 (1929). There is no dispute in this case concerning the subject of or the parties to the option, but only as to its terms.

The trial court concluded that since, by the terms of the agreement, the plaintiff was given the absolute right "to anticipate *any and all payments,*" and since he was financially capable and willing to pay the entire balance of the purchase price in cash, any uncertainty that might exist concerning the terms of the purchase money mortgage was rendered academic. We agree. A contract is not too uncertain for specific enforcement merely because a promisor is given a choice of performing in several ways, whether expressed as alternative performances or otherwise. Restatement, 2 Contracts § 370, comment d (1932); Restatement (Second), Contracts § 376, comment b (tentative draft, 1979). Since the terms of the agreement unequivocally gave the plaintiff the choice of anticipating all payments, and since he exercised that choice by his offer to pay the entire balance of the purchase price

in cash, the essential terms of the contract are determinable. Even if the imprecision in the payment terms were to be read to require determination by future agreement of the parties, the undisputed fact that the plaintiff, with the defendants' consent, substantially improved the property makes equitable relief entirely appropriate lest the plaintiff suffer an unwarranted forfeiture. See Restatement (Second), Contracts § 376, illustration 2 (tentative draft, 1979). Courts in other jurisdictions have ordered specific performance in similar circumstances. See, e.g., *Shull* v. *Sexton,* 154 Colo. 311, 390 P.2d 313 (1964); *Styers* v. *Dickey,* 261 Md. 225, 274 A.2d 374 (1971); *Matlack* v. *Arend,* 2 N.J. Super. 319, 63 A.2d 812 (1949); *Mathers* v. *Eddy,* 267 Or. 191, 515 P.2d 912 (1973); *Morris* v. *Ballard,* 16 F.2d 175 (D.C. Cir. 1926).

The defendants' counterargument rests on the proposition that the plaintiff's offer to pay cash is legally insufficient because the purpose of the purchase money mortgage was to structure the deal as an installment sale for tax purposes. See I.R.C. § 453, 26 U.S.C. § 453. True, the court found that the purpose of the clause requiring a down payment of 29 percent of the purchase price was to qualify the transaction as an installment sale and to enable the defendants to spread taxes on any gain from the sale over twenty years. The court also found that the right of prepayment could defeat the purpose of the installment sale. The sufficiency of the memorandum of agreement to establish a qualifying installment sale is however unrelated to the memorandum's sufficiency to meet the criteria of the Statute of Frauds. Whatever the advisability may be of an anticipation clause in an agreement attempting to structure an Internal Revenue Service-

approved installment sale, the memorandum here, and the consequent part performance, sufficiently meet the requirements of the Statute of Frauds.

We turn now to the question of relief. In view of our holding that Mary never authorized her husband to act as her agent for any purpose connected with the lease and option-to-purchase agreement, recovery against her is precluded. As to Walter, the fact that his ownership was restricted to an undivided one-half interest in no way limited his capacity to contract. He contracted to convey full title and for breach of that contract he may be held liable. *Schneidau* v. *Manley,* supra, 288; see *Foster* v. *Civale,* supra, 474. The facts of the case are sufficient to furnish a basis for relief to the plaintiff by specific performance or by damages.

The rule we have applied under similar circumstances is that "the vendee, if he so elects, is not only entitled to have the contract specifically performed to the extent of the vendor's ability to comply therewith by requiring him to give the best title he can or convey what he has, but he may compel the vendor to convey his defective title or deficient estate, and at the same time have a just abatement out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full. . . . [T]he court may confine the vendee's relief to damages, where under the circumstances the granting of specific performance would be inequitable, particularly where the rights of third parties are concerned." *Schneidau* v. *Manley,* supra, 289. Since no third parties are here involved, the form of relief to be accorded must take into account the plaintiff's preference as well

as the court's own discretion, "depending upon the equities of the case and based on reason and sound judgment." Id.

There is error as to the judgment against the defendant Mary Stefanovicz; the judgment as to her is set aside and the case remanded with direction to render judgment in her favor. As to the defendant Walter Stefanovicz, there is error only as to the remedy ordered. The judgment as to him is set aside and the case remanded for a new trial limited to the form of relief.

In this opinion the other judges concurred.