[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Mary and Charles LeConche, filed a second amended complaint on June 17, 1991, pleading twenty-four counts. Plaintiffs allege two causes of action — negligence and breach of contract — against six defendants: Kenneth W. Elligers, M.D., Carey Ann Reber, M.D., Brandan M. Fox, M.D., John T. DeMaio, M.D., St. Francis Hospital and Medical Center and Hartford Urology Group.
Plaintiffs allege that on or about October 16, 1986, at approximately 6:20 a.m., the plaintiff Mary LeConche presented herself and was admitted to the defendant St. Francis Hospital. She stated that defendant Dr. Elligers "presumptively diagnosed her as having pyelonephritis." Defendant doctors Fox and DeMaio subsequently examined the plaintiff and each made the same diagnosis. On or about October 21, 1986, at approximately 10:00 a.m., the plaintiff was discharged from the defendant St. Francis Hospital.
On or about October 22, 1986, the plaintiff was diagnosed as having retrocecal appendicitis and Dr. Tortora performed an appendectomy. On or about November 1, 1986, plaintiff was discharged from defendant St. Francis Hospital.
In counts five and seventeen, plaintiffs allege the negligence of defendant St. Francis Hospital. In counts eleven and twenty-three, plaintiffs allege breach of contract by defendant St. Francis Hospital.
Plaintiffs allege that "[a]t all times relevant herein, the defendants, Doctors Elligers, Reber, Fox and DeMaio were agents, servants and employees of the defendant, St. Francis Hospital."
On April 5, 1991, pursuant to Conn. Practice Bk. 378 et seq., the defendant St. Francis Hospital filed a motion for summary judgment, a supporting memorandum of law and two supporting affidavits.
The supporting affidavit of Shelley L. Ladd, (Administrative Coordinator, Medical Staff/House Staff Services, St. Francis Hospital), states that all of the defendant physicians were "Active Staff Members" at the time of the alleged wrongdoings. Ms. Ladd further states in her affidavit that "Active Staff Members are private physicians that are CT Page 5739 granted privileges to use the hospital facilities, but are in no respect agents, servants or employees of the hospital, nor do they receive any form of compensation or salary from the hospital." Further, "Saint Francis Hospital has no right to interfere with, direct, or decide the course of treatment provided by physician who has active staff privileges to his patients."
The supporting affidavit of Santo A. LoBrutto, (Chief Corporate Accountant, St. Francis Hospital), states that none of the defendant physicians were receiving salary of compensation from the hospital at the time of the alleged wrongdoings.
Defendant moves for summary judgment on the grounds that "[t]here is no question of fact that the defendant physicians were independent contractors with regard to St. Francis Hospital, and the defendant Hospital cannot be responsible for their actions."
On June 13, 1991, pursuant to Conn. Practice Bk. 378 et seq., plaintiff filed a memorandum of law in opposition to defendant's motion for summary judgment accompanied by a counter-affidavit of plaintiff Mary LeConche. Plaintiff states in her counter-affidavit that "[a]t all times relevant . . . it was [her] belief and understanding that the aforementioned defendants [sic] doctors were agents or employees of the defendant, St. Francis Hospital." Further, "at no time between October 16, 1986 and November 1, 1986, inclusive, was [she] informed by the defendant, St. Francis Hospital, or its representatives that the defendant doctors were not agents or employees of the defendant hospital."
 II.
The defendant movant argues in its supporting memorandum that "there is no genuine issue of fact that the above doctors were agents, servants or employees of the hospital. Therefore, St. Francis Hospital is entitled to summary judgment as a matter of law."
Plaintiffs argue in their memorandum in opposition that "a genuine issue of material fact exists as to whether or not the defendant hospital can be held liable for the negligence of the defendant physicians." Plaintiffs argue that "[t]he defendant physicians were the ostensible agents of the defendant hospital and, therefore, the defendant hospital should be estopped from denying liability."
Our Supreme Court has stated: CT Page 5740
 Agency is defined as "`the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . Restatement (second), 1 Agency 1." McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, 322, 321 A.2d 456 (1973). Thus, the three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Restatement (Second), 1 Agency 1, comment b (1958).'
Beckenstein v. Potter and Carrier, Inc., 191 Conn. 120, 132-33
(1983), quoting Botticello v. Stefanovicz, 177 Conn. 22, 25 (1979).
 Some of the factors listed by the Second Restatement of Agency in assessing whether such a relationship exists include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the `instrumentalities, tools and the place of work'; and the method of paying the agent.
Id., 191 Conn. at 133.
 `"Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." (citation omitted.) . . . Apparent authority thus must be determined by the acts of the principal rather than by the acts of the agent.
Id., 191 Conn. at 140. "Furthermore, the party seeking to impose liability upon the principal must demonstrate that it acted in good faith based upon the actions of inadvertences of the principal." Id., 191 Conn. at 140-41.
Ordinarily, the question of agency is one of fact to be determined by the trier of fact. West Haven Sound Development Corporation v. West Haven, 201 Conn. 305, 311 (1986).
The issue of apparent authority is one of fact, requiring CT Page 5741 the trier of fact to evaluate the conduct of the parties in light of all of the surrounding circumstances. Lettieri v. American Savings Bank, 182 Conn. 1, 9 (1980).
Research reveals no reported case law in Connecticut which addresses the issue of whether a hospital may be held vicariously liable under an apparent authority theory for the negligence of its staff physicians. However, other jurisdictions have addressed this issue and have imposed liability on hospitals for their staff physicians' negligence under the theory of apparent authority. Article, 51 ALR 4th 235, specifically 7.
The Connecticut Supreme Court, by way of dicta, addressed the issue of whether a hospital may be held vicariously liable for the negligence of its employees in Mather v. Griffin Hospital, 207 Conn. 125 (1985). In Mather, plaintiff brought a medical malpractice actions against a hospital and staff physician alleging negligence in the delivery and post-delivery treatment of the minor plaintiff. With regard to the hospital's liability, the court stated that "any negligence the jury ascribed to Thompson [a hospital employee/registered nurse] would have been attributable to the hospital under the doctrine of respondeat superior. Bria v. St. Joseph's Hospital,153 Conn. 626, 630 . . . (1966)." Id., at 136. The dicta of Mather, although helpful, is not dispositive on the issue of whether a hospital may be held vicariously liable for the negligence of its staff physician under an apparent authority theory.
The subject of where a physician has ostensible agency or apparent authority is addressed in 51 ALR 4th 235, 7. Cases are cited where courts in other jurisdictions have held that where a hospital holds out to the public or to its patients that physicians associated with it are its employees, the hospital may be held liable for the negligence of such physicians under the doctrine of ostensible agency, apparent authority or agency by estoppel.
The court finds that the reasoning of courts in other jurisdictions as cited in 51 ALR 4th 235, that a hospital may be held liable for its staff physician's negligence under said theories is persuasive.
The Pennsylvania court in Capan v. Divine Providence Hospital, 430 A.2d 647 (1980) recognized the ostensible agency concept in cases involving hospital liability for the negligence of independent contractors. The Capan court stated at p. 649:
The courts in these cases concluded that CT Page 5742 despite the fact that a physician holds independent contractor status with respect to a hospital, he may nonetheless be an agent of the hospital with respect to the patient. Two factors contributed to this conclusion. First, the changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care. See Grewe v. Mt. Clemens Hospital, supra, 404 Mich. at 251-52, 273 N.W.2d at 433. As the court noted in Bing v. Thunig, 2 N.Y.2d 656, 666, 163 N.Y.S.2d 2, 11, 143 N.E.2d 3, 8 (1957),
 The second factor justifying a finding of an "ostensible agency" relationship between hospital and physician exists where the hospital "holds out" the physician as its employee. Brown v. Moore, 247 F.2d 711
(3rd Cir. 1957) (applying Pennsylvania law) (alternative holding); Howard v. Park, supra at 499, 195 N.W.2d at 40; Lundberg v. Bay View Hospital, supra at 135, 191 N.W.2d at 823; Adamski v. Tacoma General Hospital, supra at 112, 579 P.2d at 97-79. A holding out occurs "when the hospital acts or omits to act in some way which leads the patient to a reasonable belief he is being treated by the hospital of one of its employees." Adamski v. Tacoma General Hospital, supra at 115, 579 P.2d at 979.
Thompson v. Nason Hospital, 535 A.2d 1177 (1987), also a Pennsylvania court, has adopted the rationale in Capan, supra. See, also, Hardy v. Brantley, 471 So.2d 358 (1985).
The concept of ostensible agency and apparent authority involve questions of fact that must be addressed at trial.
Therefore, the defendant's Motion for Summary Judgment is denied because there remain genuine issues of material fact regarding the issue of apparent authority and the existence of an ostensible agency relationship.
STENGEL, J.