[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter came to the superior court in January 19, 1995 as an application for an order to show cause why a temporary injunction should not issue prohibiting the defendants from proceeding to the arbitration of certain disputes between the parties.
After a pretrial conference with the court (Dean, J.) and with the consent of the parties the show cause order was "held in abeyance and adjourned" until a heating could be had on the issue of the existence of an agency relationship between the plaintiff and the defendant Boss Business Interiors, Inc.
This court held such a hearing, with evidence received limited to the issue of agency. The specific question is whether the defendant Boss Business Interiors, Inc. ("Boss") acted as an agent for the plaintiff when Boss entered into a contract with the defendant Montagno Construction, Inc. ("Montagno") to perform construction work on premises wherein the plaintiff was the CT Page 8037 lessee. The answer is to be determined from the interpretation of a contract between the plaintiff and Boss, and the conduct between them at and prior to the execution of that contract.
The creation of an agency relationship requires: (1) a manifestation by the principal that the agent will act for him;(2) acceptance by the agent of that undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. Botticello v. Stefanovicz, 177 Conn. 22,25 (1979). Agency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. McLaughlin v.Chicken Delight, Inc., 164 Conn. 317, 322, 321 A.2d 456 (1973). The existence of an agency relationship is a question of fact.Botticello v. Stefanovicz, supra, 26. Some of the factors in assessing whether such a relationship exists include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools, and the place of work; and the method of paying the agent. Beckenstein v. Potter and Carrier, Inc.,191 Conn. 120, 133, 464 A.2d 6 (1983). The labels used by the parties in referring to their relationship are not determinative; a court must look to the operative terms of their agreement or understanding. Beckenstein v. Potter and Carrier, Inc., Id. 133.
The plaintiff and Boss entered an AIA Standard Form of Agreement for Interior Design Services with respect to plaintiff's real estate office in Westport. The plaintiff had previous dealings with Boss regarding construction work at other locations of the plaintiff's real estate offices. On at least two prior occasions, the plaintiff availed itself of Boss' design and architectural services, but was aware that a third party was the general contractor on each project, whom the plaintiff paid directly. On the instant project, the only contract which the plaintiff signed was the above referenced contract with Boss, and Boss was the only entity the plaintiff ever paid for the work. A witness for the plaintiff, Mr. Robert Bakken, vice-president, secretary and treasurer of the plaintiff, testified that Boss' representatives had told him prior to entering into the contract that if Boss did the construction as well as the design and architectural work, Boss would use non-union labor from outside Fairfield county and thus, perform the job at a lower price. No one appeared at trial for or testified on behalf of Boss, and CT Page 8038 this testimony remained undisputed.
The contract between the plaintiff and Boss calls for an initial payment of $119,000 upon execution and the plaintiff paid that sum plus additional money to Boss, totaling over $200,000. Article 12 of the contract, which calls for the insertion of "description of other services . . . included within Basic Compensation . . ." refers to "Base Construction and Finishing estimated at $35 per square foot". The plaintiff never paid anyone other than Boss. The contract gives the plaintiff no right to direct or control the work of Boss, nor does it provide for the plaintiff to supply the "instrumentality, tools and place of work", nor does it gives the plaintiff the right to determine the method of paying Boss.
The defendant Montagno points to several provisions of the plaintiff's contract for the proposition that an agency was created between the plaintiff and Boss. Most particularly he emphasizes paragraph 2.5.6, which reads in relevant part "the architect . . . shall (1) assist the owner in obtaining bids or negotiated proposals and (2) assist in awarding and preparing contracts for interior construction and for furniture, furnishings, and equipment. . . ." The court finds that even the words "architect . . . shall assist in awarding and preparing contracts . . ." falls far short of creating an agency relationship wherein Boss is authorized to sign contracts as a representative or agent of the plaintiff. In short, there is nothing in the contract between the plaintiff and Boss, or the prior conduct between them, that evidenced an intent that Boss act as an agent of the plaintiff. There is clearly lacking (1)
any manifestation by the plaintiff that Boss would act for him,(2) acceptance by the agent of the undertaking, and (3) any understanding between the parties that the plaintiff will be in control of the undertaking. See Beckenstein v. Potter andCarrier, Inc., supra, 191 Conn. 133. The court finds that the plaintiff was not aware at the time of entering into the contract with Boss, that Montagno had or would have any relationship with Boss, which would implicate the plaintiff as Boss's principal. The court further finds that the plaintiff and Boss, using a standard AIA Form of Agreement for design services, modified accordingly, intended to and did enter into a relationship of independent contractor, wherein Boss was to perform design, architectural as well as contracting services for the plaintiff, who agreed to pay Boss therefore. CT Page 8039
Montagno points to the contract between himself and Boss, and the labels given to the parties therein, as evidence of the agency relationship between the plaintiff and Boss. The plaintiff was not a signator of this agreement, and was unaware of its existence. Nothing Montagno and Boss could do, without the plaintiff's consent, after the execution of the contract between the plaintiff and Boss, could create such a relationship between those two parties.
Montagno's theory of apparent authority is also unavailing. The issue of apparent authority is one of fact to be determined on two criteria: first, on the conduct of the principal in holding out his agent as having sufficient authority to include the action in question; and second, on a reasonable belief of a party acting in good faith. Hollywyle Assn. Inc. v. Hollister,164 Conn. 389, 395, 324 A.2d 247 (1973). "In Washington Cedar andFir Products, Co. v. Elliott, the rule is explained as follows: Whether or not a principal is bound by the acts of its agent, when dealing with a third person who does not know the extent of its authority, depends, not so much on the actual authority given or intended to be given by the principal, as upon the question, what did such a third person, dealing with the agent, believe and have a right to believe as to the agent's authority, from the acts of the principal. . . . The apparent authority of the agent which thus binds the principal, beyond that actually conferred, must always be deduced from authorized acts of the agent, and from surrounding facts with the knowledge of which the principal is chargeable, and not from the acts of the agent himself in excess of his authority and of which the principal had no knowledge . . ." (Citation omitted; internal quotation marks omitted.) Id. 396. The plaintiff here had no notice or knowledge that Boss was entering into a contract with Montagno and there was no actual authority to do so. There were no acts of the plaintiff upon which Montagno had a right to rely as to the authority of Boss to sign a contract on behalf of the plaintiff.
Finally, Montagno offers the proposition that the plaintiff ratified the acts of Montagno. "Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account. Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all material circumstances." (Citation omitted; internal quotation marks omitted.) Botticellov. Stefanowicz, supra, 177 Conn. 28. The plaintiff and its agents apparently became aware, sometime after execution of its contract CT Page 8040 with Boss, that Montagno was present on the job. The plaintiff or its agents viewed Montagno's construction sign at the site, and the plaintiff's manager of the Westport office may have discussed construction with Montagno. There is a notable lack of proof that the plaintiff accepted Montagno's work with an intent to ratify or "with full knowledge of all the material circumstances".Botticello v. Stefanowicz, supra, 177 Conn. 28. In fact, the court finds that the circumstances presented to the plaintiff at the time were as consistent with Montagno's presence as a sub-contractee of Boss as with any belief that the plaintiff would have formed that he was a general contractor to which the plaintiff was somehow directly bound.
The parties raised the issues of the burden and standard of proof in this case. The court ruled at the hearing that the burden of proof lay with the plaintiff on its affirmative allegation that Boss was not his agent for the purpose of entering into a contract with Montagno. The parties dispute the standard of proof to be applied, with the plaintiff claiming the standard is "a reasonable probability of success on the merits of establishing that issue at trial", while Montagno contends that the standard of proof by a preponderance of the evidence is required.
Without specifically determining that issue, the court nevertheless finds that the plaintiff has proven by a preponderance of the evidence that no agency relationship existed between the plaintiff and Boss, under any legal theory.
The matter is referred to the caseflow office for reassignment for further hearing on the show cause order.
D'ANDREA, J.