[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The sole issue in this case is whether the defendant Susan Arcangelo is personally liable for the outstanding bill for yellow pages advertising.
Facts
The plaintiff alleges that in 1989, 1990 1991 the defendant, Susan Arcangelo, d/b/a A J Auto Parts, entered into "written and oral agreements" whereby this obligation of $33,132.14 arose.
Actually, no billing was ever made to the defendant, but to "A J Used Auto Parts Inc." or "Chuck Eddie Used Auto Parts," both at 1455 Honeyspot Road Ext., Stratford.
The 1989, 90 91 "contracts" continued a preexisting account in these same names. They were signed by the defendant individually on a form prepared by the plaintiff on a line which is captioned: "Signature title of customer or authorized representative."
This defendant did not provide the plaintiff with the names of the entities to be billed, the account having existed before she became the person who handled advertising for her employer.
The plaintiff individually signed letters to the plaintiff directing various billing changes. These were on letterheads of "A J, Inc."
There was no corporate entity known as "A J Used Auto Parts, Inc." but there was a corporation known as "A J Used Parts, Inc." That entity was dissolved for failure to file a biennial report in 1992 but was reinstated. It was incorporated in 1979.
At no time did the plaintiff bill the defendant or make demand for payment on her. CT Page 1288
The plaintiff made no claim that it assumed it was dealing with the defendant personally.
 I.
The plaintiff argues that the defendant did not plead a defense based on agency and thus the Court should not consider that defense. The Court finds that the defendant's special defenses, especially the second, adequately raise that defense and put the plaintiff on notice thereof.
 II.
The plaintiff also contends that the defendant did not disclose the identity of her principal and cites several cases which support this general proposition. However, these cases are distinguishable from the instant case.
The fact that she was an agent acting for a principal was disclosed to the plaintiff. In fact, the existence of the principal was known to the plaintiff before the defendant commenced her duties as business manager.
Plaintiff's Exhibits A B, the advertising "contracts", identify two entities as receiving the advertising services: A J Used Auto Parts, Inc. Chuck Eddie Used Auto Parts. The latter title was changed on some of the contracts. The existence or status of that entity was not discussed at trial.
This defendant was never billed in her name by the plaintiff, and no correspondence from the plaintiff was addressed to her personally.
The plaintiff stresses that when the defendant signed her name on the contracts, she did not indicate any agency status. She signed on a form provided by the plaintiff and that signature line is for: "Signature title of customer or authorized representative." The defendant claims to have signed in that latter capacity. This is perfectly logical in view of the fact that each contract bears the name of one of the two entities noted above.
Unlike the situation before the court in New EnglandWhalers Hockey Club v. Nair, 1 Conn. App. 680, 474 A.2d 810
(1984), bills were directed to the stated entities at their places of business, they were looked to for payment, they obtained the credit (before the hiring of the defendant) and the defendant never represented she would pay the bill or be CT Page 1289 responsible for it.
In discussing what constitutes disclosure to relieve an agent of liability, this "Caution" is stated in 3 Am.Jur.2d, Agency § 327 (1986) at page 834:
 Caution: Where sufficient information is disclosed upon the face of the contract by the agent to disclose to a reasonable person the identity of the principal, the principal and not the agent is liable. Moreover, where the other party has actual knowledge of the agency and the identity of the principal, the agent will be relieved from liability, whether he himself makes the disclosure or the other party acquires the knowledge from some other source. Not only the duty of disclosure but the time of disclosure is important. In order to protect the agent from personal liability, it is essential that the principal be disclosed to the third person at the time the transaction is being conducted. On a contract, for example, it is vital that the agent disclose his principal at the time it is made in order to escape personal liability thereon, and the fact that he discloses the identity of his principal after the contract is executed or consummated will not relieve him from liability. However, if the third person actually knew that the agent was acting for a principal and also knew the principal's identity at the time of the transaction in question, the principal is considered to have been disclosed.
Section 327 states further that:
 The disclosure by the agent of the fact of the agency and the name of the principal may, of course, be proved by direct evidence, but the disclosure, or the third person's knowledge, may also be shown by the circumstances surrounding the transaction and the course of dealing between the parties.
The two business entities received the benefit of these contracts. This defendant received no benefit as did the defendants inZolan Bernstein, Dworken Klein v. Milone, 1 Conn. App. 43,45, 467 A.2d 938 (1983).
The existence of an agency relationship is a question of fact CT Page 1290 for the trier. Botticello v. Stefanovicz, 177 Conn. 22,26, 411 A.2d 16 (1979).
In view of the "circumstances surrounding the transaction", the prior and ensuing course of dealing between the parties, and the distinguishing features between this case and those relied on by the plaintiff, the Court concludes that the defendant was not acting individually but as an agent for the business entities set forth in the contracts. The facts do not support the conclusion that the plaintiff reasonably believed this defendant was the principal, see Caliendo v. Catania. 127 Conn. 66, 70
(1940) and there was a proper disclosure of the principal.
 III.
The plaintiff makes the further claim that because the word "auto" was not contained in the actual corporate name of the defendant's claimed principal, there was no valid legal entity and thus the agent is personally liable.
"As a general rule, one who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, renders himself personally liable on the contract so made." 3 Am.Jur.2d, Agency § 306 (1986) at page 810.
In this case, the defendant did not provide the customer's title to the plaintiff and its use preceded her assumption of duties and execution of subsequent contracts. Further, had the plaintiff sued the actual corporation in its name, it certainly would have obtained a judgment against the corporation despite the difference of the word "auto". At the very least, a count in quantum meruit would have been successful. (Such a claim has been asserted against this defendant but there was no showing of any benefit accruing to her.)
While there appear to be no Connecticut cases dealing with this particular issue of such a similarity of names, our Supreme Court was confronted with such a problem in a case under the Uniform Commercial Code.
In Wyandot Inc. v. Gracey Street Popcorn Co.,208 Conn. 248, 544 A.2d 180 (1988), the plaintiff sought to recover against an individual defendant who had signed a corporate check but neglected to indicate his representative capacity.
The corporate name printed on the face of the check was CT Page 1291 "Gracey Street Popcorn, Inc.", but the correct corporate name was "Gracey Street Popcorn Company, Inc." Id., 251. The trial court found that the check failed to name the corporate entity that the defendant represented. Id. At the time, General Statutes §42a-3-403(2)(a) provided:
 "an authorized representative who signs his own name to an instrument (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity."
The defendant argued that the variation between the two names was inconsequential. Id. He argued the corporation was identified, the plaintiff knew it was a corporate check, knew the corporation with which it was dealing and was not misled. Id., 251-53.
The Court stated at page 252:
 "We conclude that `Gracey Street Popcorn Company, Inc.,' the corporate principal that Carabetta claims to have represented when he signed the check in question, was sufficiently identified on the face of the check by the appellation, `Gracey Street Popcorn, Inc.,' to be considered a named principal within the meaning of § 42a-3-403(2)(b)."
The Court went on to discuss cases involving this specific issue and stated at page 254 255:
 "Moreover, we have found no case that even addressed the problem where the name of the corporate principal in an instrument was as similar to its registered name as it is in this instance and the name also indicated that the principal was a corporate entity. There were cases found where the corporate name used in the instrument varied slightly from the correct corporate name and the variation was ignored by the court and the parties apparently because it was thought insignificant.
(citations omitted)
The view that a minor deviation in the name of a CT Page 1292 corporation has little legal significance finds support in the holding of this court in Seaboard Commercial Corporation v. Leventhal, 120 Conn. 52, 54-55, 178 A. 922 (1935), wherein we stated that `[i]t is the general rule that in case of a misnomer of a corporation in a grant, obligation or written contract, if there is enough expressed to show that there is such an artificial being and to distinguish it from all others, the corporation is sufficiently named although there is a variation of words and syllables.'
(citations omitted)
 When applied to negotiable instruments generally, and to the instant case in particular, this holding would appear to require a common sense conclusion that where a corporate name, deviating from that registered with the secretary of the state but clearly indicating the existence of a corporate principal, appears on the fact of an instrument it at least creates an ambiguity in the instrument that raises a question as to the capacity in which the individual whose signature is affixed thereto signed. . . ."
This too is a question for the trier of facts. Botticellov. Stefanovicz, supra, 177 Conn. 26.
The Court adopts the reasoning of the Supreme Court and finds them applicable to the facts in this case.
It is therefore the conclusion of the Court that there was a sufficient identification of the principal to negate the plaintiff's argument that the defendant contracted for a nonexistent or fictitious principal or one without legal status or existence.
 IV.
The plaintiff also argues that the defendant did not sign with any indication of her representative capacity. She testified that she did not sign personally but as a representative of the corporation. Such evidence is admissible.Wyandot Inc. v. Gracey Street Popcorn Co., supra,208 Conn. 250. Just as the corporate principal's name on the check in that case allowed that defendant to testify as to his capacity, so too does the corporate name on the contracts license this CT Page 1293 defendant to explain her actions. The Court finds her explanation credible.
Conclusion
It is the conclusion of the Court that the plaintiff has failed to prove that it contracted with the defendant, that the defendant received no benefit therefrom, and she did not agree to pay the corporate defendant.
Judgment may enter for the defendant on all three counts.
DeMayo, J.