[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS OF CASE
On August 6, 1994, the plaintiff, Kevin Lindquist, was involved in a motor vehicle accident, while operating a 1991 Geo two-door sedan on Triangle Street in Danbury.
He alleges that a collision occurred involving his vehicle and a 1982 Pontiac Firebird operated by one Susan M. Hefferon.
The plaintiff claims that the Hefferon vehicle was uninsured at the time of the accident, and that the accident was caused by the negligence and carelessness of Susan M. Hefferon. CT Page 3955
Kevin Lindquist claims injuries and damages as set forth in the complaint as a result of the collision.
This action was instituted against the defendant, Allstate Insurance Company, claiming that Kevin Lindquist was an insured and/or a covered person under a policy of insurance issued by the Allstate Insurance Company (Policy No. 0 84 750166) on the date of the accident.
The defendant filed an answer to the complaint dated March 12, 1996, including four special defenses.
The fourth special defense contends: "At the time of the loss alleged [,] the motor vehicle policy in effect from the Defendant, Allstate Insurance Company, did not provide for underinsured/uninsured motorist benefits."
In his reply to the special defense dated March 18, 1996, Kevin Lindquist neither admitted nor denied the allegations in the fourth special defense, thus leaving the defendant to its proof.
In May, 1998, the parties agreed to bifurcate the issues involved in this case.
It was agreed that the issue of coverage would be tried to the court, notwithstanding an earlier claim to the jury docket.
In the event it is determined that the plaintiff, Kevin Lindquist, was covered by the provisions of Policy No. 0 84 750166, and that the policy provisions, in effect, included underinsured/uninsured motorist coverage, the issue of damages is reserved for a jury trial.
Trial concerning the issue of coverage was held on January 27, 1999 and January 28, 1999.
The trial was limited to the following issues:
 At the time of the loss alleged in the plaintiffs complaint, was the plaintiff Kevin Lindquist a covered person under Policy No. 0 84 750166, and, if so, did the provisions of the policy in effect on August 6, 1994 provide for underinsured/uninsured motorist coverage?
CT Page 3956
 HISTORY OF POLICY NO. 0 84 750166
In order to respond to the questions posed, it is necessary to review the history of the policy under which the plaintiff claims he was covered on August 6, 1994.
The policy in question, a motorcycle policy, was issued to Kevin Lindquist on June 2, 1993 (Exhibit 1) for a term of six months, May 12, 1993 to November 12, 1993.
The total premium for the six month period was $320.60.
The policy was renewed for the period beginning November 12, 1993 and ending May 12, 1994.
The policy was renewed on the same terms and conditions as the original term, including underinsured/uninsured motorist coverage of $100,000 per person and $300,000 per occurrence (Exhibit 2).
The total premium, $344.30, was broken down into its component parts as follows:
 Bodily Injury and Property Damage Liability $ 208.00 Uninsured Motorist 46.30 Collision (Auto) 62.00 Damage to vehicle 28.00
Total $ 344.30
During January of 1994, the plaintiff contacted Ms. Pamela Fairchild of the McCarthy Agency regarding suspension of motorcycle coverage during the winter months.
Suspension of coverage was ordered for the liability and underinsured/uninsured motorist portions of the policy effective December 6, 1993 (Exhibit A).
Because the policy had lapsed for nonpayment of premium after the renewal period, it was necessary for Kevin Lindquist to reinstate the policy, along with the requested suspensions of coverage.
Payment of $72.48 was made by Kevin Lindquist on or about February 1, 1994 (Exhibit 4, p. 2). CT Page 3957
The reinstated policy, with the suspensions of coverage, was sent to the plaintiff, showing a premium of $28 during the period of the coverage suspension.
The policy was again the subject of a suspension notice in June of 1994 (Exhibit H).
The plaintiff made a payment of $28 on June 2, 1994, representing the amount of the comprehensive coverage (Exhibit 4).
Kevin Lindquist also maintained an automobile insurance policy with the defendant, Allstate Insurance Company (Policy No. 084614625), which was canceled effective May 30, 1994 (Exhibit D).
Although payment was tendered after the cancellation date, the policy was not reinstated, since the late premium was not accepted (Exhibit E).
A payment of $207.85 was refunded to Kevin Lindquist (Exhibit C).
Therefore, the only insurance policy maintained by the plaintiff, Kevin Lindquist, with the defendant, Allstate Insurance Company, on August 6, 1994, was the motorcycle policy.
Kevin Lindquist testified that in April of 1994, he had a conversation with Pamela Fairchild, during which he asked that all coverages on the motorcycle policy be reinstated.
Pamela Fairchild denied that the conversation took place, and the record compiled in the form of exhibits indicates that coverage was not reinstated.
A cash payment of $28 was posted on June 7, 1994 (Exhibit L), the amount listed as due on the notice of cancellation (Exhibit H) sent to Kevin Lindquist.
Kevin Lindquist further claims that another conversation with Pamela Fairchild occurred on July 6, 1994, when he attempted to pay what was owed on the motorcycle policy in an attempt to reinstate all coverages. CT Page 3958
On July 6, 1994, Kevin Lindquist wrote a check payable to the defendant Allstate, in the amount of $163.77 (Exhibit 5).
He claimed that the payment was designed to reinstate full coverage on the motorcycle policy ($100,000 per person and $300,000 per accident), although he had received no premium notice or correspondence from either the McCarthy Agency or the defendant, Allstate Insurance Company.
The $163.77 check was credited to the account of Christopher Nichols, Kevin Lindquist's roommate (Exhibit 6).
The check corresponded to the exact amount of a payment due consistent with a payment notice sent to Christopher Nichols (Exhibit K).
Payment was due on July 3, 1994.
Pamela Fairchild testified that the premium stub produced at trial was given to her by Kevin Lindquist, along with the check for $163.77.
Two questions are presented, based upon these facts: (1) Is the defendant, Allstate Insurance Company, liable for the acts and/or omissions of the McCarthy Agency, James McCarthy and Pamela Fairchild; and (2) was Kevin Lindquist covered by policy of insurance number 0 84 750166, with uninsured motorist limits of $100,000/$300,000 on August 6, 1994, the date of the automobile accident?
 EVIDENCE SUPPORTS EXISTENCE OF AGENCY RELATIONSHIP
Ample evidence was presented to demonstrate that James McCarthy and the McCarthy Agency acted at all times as the agent of the defendant, Allstate Insurance Company.
In order for a relationship of principal and agent to be present, the party asserting the existence of the agency must prove: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and, (3) an understanding that the principal will be in control.Gateway v. DiNoia, 232 Conn. 223, 240 (1995); Botticello. v.Stefanovicz, 177 Conn. 22, 25 (1979).
The existence of an agency relationship is a question of CT Page 3959 fact. Beckenstein v. Potter and Carrier, Inc., 191 Conn. 120, 133
(1983); Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 124
(1976). Proof must be by a fair preponderance of the evidence.Leary v. Johnson, 159 Conn. 101, 105 (1970).
A principal is liable for the authorized acts of his agent. 1 Restatement (Second), Agency § 140, p. 349 (1958).
Here, no distinction was made at any time between the defendant, Allstate Insurance Company, and the McCarthy Agency.
James McCarthy utilized stationery with an Allstate letterhead, and authored correspondence in the name of Allstate (Exhibit F).
Checks made payable directly to "Allstate" were deposited into an Allstate account (Exhibit 5).
Pamela Fairchild testified that the agency had the ability to bind coverage in the name of the Allstate Insurance Company.
The plaintiff has therefore met his burden of proving the existence of the agency relationship between the McCarthy Agency and the defendant, Allstate Insurance Company.
Furthermore, the Allstate Insurance Company clothed the McCarthy Agency with the apparent authority to act on behalf of Allstate and to bind Allstate by its actions. Nowak v. CapitolMotors, Inc., 158 Conn. 65, 69 (1969); Restatement, (Second) Agency §§ 8, 27 (1958).
 ON AUGUST 6, 1994, THE POLICY ISSUED TO KEVIN LINDQUIST DID NOT AFFORD UNDERINSURED/UNINSURED MOTORIST COVERAGE TO THE PLAINTIFF
In most instances, the testimony of the witnesses in this matter can be substantiated through an examination of the exhibits introduced at trial.
On June 2, 1993, a policy of insurance covering his motorcycle was issued to the plaintiff.
The policy contained limits of $100,000 per person and $300,000 per incident for uninsured/uninsured motorist coverage, and a six month premium of $320.60 (Exhibit 1). CT Page 3960
The terms of the policy were renewed for another six months, with a total premium of $344.30.
All parties agree that a suspension of coverage occurred at some point, and that all coverages listed on the policy, with the exception of comprehensive, were suspended (Exhibit 3).
Although the plaintiff claims he asked that coverage be reinstated on or about April, 1994, because he was planning a vacation trip to Florida, no document substantiates that testimony.
There is no documentary evidence that a premium was paid to reinstate the suspended coverages, or any confirmation of the reinstatement generated by the McCarthy Agency or Allstate.
Kevin Lindquist had an opportunity to realize that the coverages remained suspended when he received the cancellation notice (Exhibit H) listing the past-due premium at $28.
The plaintiff acknowledges that he paid the $28 on June 7, 1994 to avoid the policy cancellation.
Any claim that payment of the $28 premium by Kevin Lindquist was sufficient to induce a belief that he had secured the coverages originally ordered for $320.60 (Exhibit 1) is incredible.
The small premium should have put the plaintiff on notice of the continued suspension of the coverages.
The plaintiff further argues that he paid a check in the amount of $163.77 (Exhibit 5), which represented moneys he thought were due under his policy.
The check is in the exact amount of the premium notice (Exhibit K) sent to the plaintiffs roommate, Christopher Nichols, in July, 1994.
The payment was credited to the account of Christopher Nichols (Exhibit 6).
The premium stub (Exhibit K), according to Pamela Fairchild, was given to her by the plaintiff, Kevin Lindquist. CT Page 3961
The plaintiff's claim that the $163.77 check was designed to apply to his policy, when it represents the exact amount due under the Nichols policy, lacks credibility.
There is no record of any "credit" to Mr. Nichols based on an overpayment, or any evidence that he paid the premium by cash or check after July 6, 1994.
The records introduced at trial supply no evidence that the July payment was anything other than a payment to be credited to the Nichols policy.
Any claim of coincidence, in light of the amount of the check and the amount due under Nichols policy, defies credibility.
 FINDINGS
1. IT FOUND that the McCarthy Agency was the agent of the defendant, Allstate Insurance Company, and that Allstate is liable for the authorized acts of its agents.
2. IT IS FOUND that Policy No. 0 84 750166 was issued by the defendant, Allstate Insurance Company, in June, 1993.
3. IT IS FOUND that coverages provided under Policy No. 0 84 750166 were $100,000 per person and $300,000 per accident for underinsured/uninsured motorist coverage.
4. IT IS FOUND that coverages were suspended, effective December 6, 1993, for all coverages except comprehensive coverage (damage to the motorcycle).
5. IT IS FOUND that coverage for underinsured/uninsured motorist coverage was not reinstated between the date of the suspension and August 6, 1994.
6. IT IS FOUND that on August 6, 1994, the insurance policy issued to Kevin Lindquist by the Allstate Insurance Company did not provide for underinsured/uninsured motorist benefits.
Judgment may enter in favor of the defendant, Allstate Insurance Company.
Radcliffe, J. CT Page 3962