DOMINICK CALIENDO *v.* FELICE CATANIA ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued June 13—decided July 16, 1940.

*Nathan A. Resnick,* with whom was *Louis Scherban,* for the appellant (named defendant).

*Samuel Gruber,* for the appellee (plaintiff).

AVERY, J. The facts in this case appear in the finding of the unemployment compensation commissioner

for the third district which is not attacked upon this appeal and may be briefly stated as follows: Prior to May 1, 1937, Felice Catania, the appellant, was the owner of two barber shops in New Haven, one located on Wall Street and the other on York Street, each known as Phil's Barber Shop, and Catania had previously decided to close the York Street shop. The lease on this shop was to expire in May, 1937, and on May 3d Catania concluded an arrangement with Louis Sacco, who had been employed by him for several years, for Sacco to buy out and operate the York Street shop. Sacco paid Catania $300 for the fixtures and equipment, but no bill of sale was given. The business was continued under the same name at a new location on York Street which was occupied under a lease made to Catania as lessee. The property in the store continued to be assessed against Catania for purposes of municipal taxes. The state barber commission was not informed of the change in ownership and the license required under § 1199c of the 1935 Cumulative Supplement to the General Statutes to be conspicuously posted in the shop was thereafter renewed in the name of Catania. Since Sacco acquired the business, in order to preserve the good will attaching to the York Street shop, he has done things to create the impression that there was an affiliation between the two shops, such as joint advertising and the sale of tickets carrying the address of each shop, although the shop selling them inked out the address of the other. When presented at the wrong shop, they were occasionally honored. Despite the seeming interest of Catania in the York Street shop, financially he had none. The entire profits went to Sacco. Catania issued checks for the rent, but only upon being provided with funds by Sacco. Similar treatment was accorded bills rendered to Catania for

gas, electricity, water and taxes. Insurance on the shop was carried in Catania's name, but Sacco reimbursed him for the premium. Advertising costs have been divided between them. When discount tickets were improperly presented and honored, proper adjustments were made. All supplies and equipment have been purchased in Sacco's name and have been paid for by him.

Following the separation in the ownership of the two shops, Catania, in his old age benefits tax return to the collector of internal revenue, continued to report as his employees the men working in the York Street shop, including Sacco himself, but discontinued this practice early in 1939. In June, 1937, following his acquisition of the York Street shop, Sacco went on a visit to Italy and remained there during the summer. Before going, he asked Catania to look after his shop while he was gone and among other things, if necessary, to hire another barber. Throughout the summer, Catania called frequently at the shop and collected the moneys and held them for Sacco until the latter's return. He hired the plaintiff, Caliendo, as an additional barber. This was done by Catania asking the business agent of the barbers union to send him a man. The plaintiff reported at the Wall Street shop, was interviewed by Catania and directed to report at the York Street shop which was in charge of a man by the name of Capasso. Following Sacco's return from Italy, the plaintiff has always been directly supervised and controlled by him. The plaintiff continued in the employment, with the exception of temporary lay-offs during the summertime and holidays, until June, 1939, when he was again laid off for the summer. Until after his lay-off in June, 1939, the plaintiff was never told by either Sacco or Catania that the York Street shop was actually owned by Sacco. In fact,

Sacco had always led his employees to believe that Catania was the owner. Upon being laid off in 1939, Caliendo filed a claim for benefits at the state employment office and was directed to obtain a termination notice. When he presented such a notice to Catania, the latter refused to sign it upon the ground that he was not Caliendo's employer. He finally did sign and Caliendo filed his claim for benefits.

The issue in this case was whether Caliendo was entitled to unemployment compensation benefits. The answer to this question depends upon whether the earnings which Caliendo had received during his base period were "wages with respect to which contributions have been paid or are payable" as required by § 807d(e) of the unemployment compensation law (1939 Supplement, § 1338e (f). It appears from the finding of the unemployment compensation commissioner that during the base period Sacco did not have enough employees in his employ for a sufficient length of time to render him subject to the unemployment compensation law. On the other hand, it appears that Catania did have a sufficient number for a sufficient time to render him subject to the law. The determination, therefore, of whether or not the plaintiff was entitled to compensation depends upon whether or not he was employed during the base period by Catania or by Sacco. Under § 805d of the law, each employer who is subject to the law shall pay contributions equal to a stated percentage "of the wages payable by him with respect to employment." Section 803d(a) prescribes that generally "employment" shall mean ". . . any service . . . performed under any express or implied contract of hire creating the relationship of master and servant, . . ." Here a contract of employment was made, Catania and Caliendo being the negotiating parties and Caliendo was never told that

any one other than Catania was to be his employer. Caliendo continued to work under this contract of employment until he was finally laid off in 1939. Until the contract was terminated, Caliendo had the right to look for compensation to the man by whom he was employed. The relationship of master and servant existed between Catania and Caliendo and could only be terminated by the termination of the contract. The decision of this case rests upon the principles of the law of agency. The law is well established that when an agent contracts in his own name, without disclosing his representative capacity, he personally is liable on the contract. "If he would avoid personal liability, the duty is on the agent to disclose his principal and not on the party with whom he deals to discover him." *Raff Co.* v. *Goeben,* 116 Conn. 83, 85, 163 Atl. 462.

The basis of this principle is that where an agent has so dealt with another that he reasonably believes the agent to be the principal, the agent is estopped to deny that this is so. *Bierce* v. *State National Bank of Memphis,* 25 Okla. 44, 46, 105 Pac. 195. As benefits under the act are payable only to those on account of whose wages contributions have been made, to permit one who has employed another under circumstances reasonably indicating that the employer is the principal and not an agent to avoid contributions upon the ground that he was not the real employer might well deprive the employee of compensation which he was entitled to assume he would receive in the event of future unemployment. The principle therefore applies to such a case as this. The original contract of employment could not be altered by rumors that came to Caliendo, but only by reliable information, and then only if he chose to ratify the change. *Merrill* v. *Kenyon,* 48 Conn. 314, 317. The right of the plaintiff to

receive benefits under the unemployment compensation law could not be defeated by showing that his employer, without his knowledge, during the base period was in fact acting for an undisclosed principal.

There is no error.

In this opinion the other judges concurred.