[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Cocchiola Paving, Inc. brought this action against Chase Development, Inc. ("Chase"), and individual defendants Kenneth O'Bernier, Donald Sciarretto and Domenic Rinaldi, seeking compensation for labor and materials furnished under two alleged contracts. Trial commenced on July 23, 1998, before this court sitting without a jury. Following a second day of trial on July 25, 1998, the court ordered post-trial briefs to be submitted on CT Page 10815 or before August 14, 1998. The court makes the following findings of fact and conclusions of law based upon its consideration of all testimony by the parties and their witnesses, all exhibits admitted as evidence and oral argument and briefs submitted by counsel.
The only issue at trial was whether the individual defendants were responsible to plaintiff for the claimed debt. It is plaintiff's position that it is due compensation from the individual defendants for paving work on two projects identified as the Blackman Road project and the Sumac street project. The parties filed a stipulation of facts dated July 23, 1998, in which they agreed that plaintiff is owed $11,065.59 on the Blackman project and $11,258.34 on the Sumac project, or a total amount due of $22,323.93. It is the defendants' position that Chase alone is liable for this debt and there was no agreement by the individual defendants to pay for these services as claimed.
Anthony Cocchiola in his capacity as an officer of the plaintiff corporation testified that he negotiated these paving contracts with the individual defendants. Specifically, he testified that he initially met with Kenneth O'Bernier, who then hired plaintiff to undertake the work. According to Cocchiola, it was his understanding that plaintiff was retained by O'Bernier in his individual capacity, in partnership with Donald Sciarretto and Domenic Rinaldi. Cocchiola further testified that he had subsequent meetings at both projects with all of these individuals, though not necessarily with all three of them at the same time but with each of them at one time or another.
The following facts were uncontroverted at trial. Rinaldi and Sciarretto were owners of a plumbing contracting business known as RS Plumbing, and O'Bernier was employed by RS. The business location of RS Plumbing was 562 Lakewood Road, Waterbury, Connecticut. O'Bernier testified that although he was not involved with the Blackman Road project, he did run the Sumac street project as a subcontracted employee of RS. He was not paid by Chase. In 1985, several years before the work in suit was commenced, O'Bernier, Sr. hired the plaintiff to do a job at Pine Village Condominiums for his associates, a partnership which included himself, Rinaldi, Sciarretto and three other individuals. At that time, O'Bernier, Sr. was working with RS which was under subcontract on the Pine Village project. All of the plaintiff's invoices in connection with the Blackman Road and Sumac street projects (plaintiff's trial exhibits C, D, E, G and CT Page 10816 H) were addressed to Ken O'Bernier either c/o 562 Lakewood Road or Ken O'Bernier c/o Lakewood Handyman, 562 Lakewood Road, and are dated between January, 1988, and December, 1989. It was only on September 17, 1991, that Ken O'Bernier, Jr. wrote to plaintiff with the request that all future bills be sent to Chase (defendants' trial exhibit 8). Lakewood Handyman was a retail plumbing store owned by RS Plumbing. The plumbing contracting business of RS was operated at the rear of the building located at 562 Lakewood Road. All of the payments made to plaintiff on the Blackman Road and Sumac street projects were made on Chase corporate checks (defendants' trial exhibits 1-5). All are signed by Ken O'Bernier, Sr., the first dated March 24, 1989. The stockholders of Chase included O'Bernier, Sr., O'Bernier, Jr., Rinaldi, Sciarretto, Sr. and Sciarretto, Jr., who also were investors in the final phase of the Blackman Road and Sumac street projects. The address of Chase according to its corporate filings (defendants' trial exhibit 6) is 51 Sandy Lane, Wolcott, Connecticut.
The court found Anthony Cocchiola credible and accepts as true his representation in and of itself that the plaintiff was retained by the three individual defendants. The court finds that other facts elicited at trial add weight to the credibility of Mr. Cocchiola's testimony.
First, the invoices were addressed to O'Bernier, Sr. at RS, a subsidiary corporation owned by Rinaldi and Sciarretto, which employed O'Bernier, Sr. Second, neither O'Bernier nor anyone else at RS ever wrote to plaintiff insisting that its billings be sent to Chase, prior to the March, 1989, commencement of payments on Chase corporate checks. Although O'Bernier testified that he called this purported billing error to plaintiff's attention prior to the September 17, 1991, letter (defendants' trial exhibit 8), the court discredits that testimony by finding that the more credible testimony was that of Mr. Cocchiola.
The fact that payments were made on Chase corporate checks is not conclusive that Chase was the obligor. See Diamond Match Co.v. Crute, 145 Conn. 277, 141 A.2d 247 (1958). In this court's opinion, it would not have required a great deal effort for Chase to demand that plaintiff submit a corrected invoice right from the beginning, in January, 1988. By doing so, Chase would have made it very clear that it was the obligor on these paving contracts. But O'Bernier made no attempt to have the plaintiff bill Chase instead of himself until almost three years later, and CT Page 10817 presumably at that time because Chase was suffering financial difficulties." `[I]t is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another. . . . [I]f he would avoid personal liability, the duty is on the agent to disclose his principal and not on the party with whom he deals to discover him.'" Diamond Match, supra, 145 Conn. 279,141 A.2d 247, quoting Caliendo v. Catania, 127 Conn. 66, 70, 14 A.2d 752
(1940); Frederick Raff Co. V. Goeben, 116 Conn. 83, 163 A.2d 462
(1932).
The third fact elicited at trial supporting the credibility of Mr. Cocchiola's testimony is that plaintiff had prior dealings with the individual defendants on the Pine Village project in 1985, when these individuals acted as a partnership. Mr. Cocchiola reasonably could have assumed that the business dealings in suit were transacted with the same partnership, making these individual defendants personally responsible for debt incurred.
Accordingly, the court finds that the contracts in suit were made with O'Bernier acting on behalf of himself, Rinaldi and Sciarretto, as claimed by plaintiff. In so concluding, the court has not ignored the testimony of the defendants to the effect that there was a big sign at the entrance to both projects advertising that the projects were owned by Chase. Whether the signs existed as the defendants claim does not in any way bear upon whether the three individual defendants contracted with plaintiff. If Chase were the sole obligor then as the court has mentioned it should have taken steps from the date of the first invoice to make it very clear to plaintiff that plaintiff was dealing exclusively with a corporate entity. A letter sent almost three years after the work was begun, seeking to correct the identity of the obligor, does not credibly support defendants' claim that Chase was the responsible contractor from the outset.
Based upon the foregoing, the court concludes that the services provided by plaintiff which are the subject matter of this litigation were rendered under contracts with the defendants in their individual capacities and they are so liable to plaintiff in the amount of $22,323.93, without interest. CT Page 10818
PELLEGRINO, J.